Argued October 9, affirmed October 22, petition for rehearing
denied November 15, 1973, petition for review denied
January 15, 1974

STATE OF OREGON, *Respondent, v.* JOHNNY
JOE CALIA, Jʀ., *Appellant.*

514 P2d 1354

*Richard L. Garbutt,* certified law student, Willamette University, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Tanzer, Judges.

TANZER, J.

This is an appeal from an armed robbery conviction after trial by jury. The victim identified the defendant as one of two men who robbed him of his jewelry sample case. The only corroboration was evidence that defendant and two companions, all from Kansas City, were in Portland for a few weeks surrounding the day of the robbery.

Various assignments of error are based on two basic assertions: that the single eyewitness identification was tainted by the investigative methods which

preceded it, and that an offer of proof of expert psychological testimony regarding visual perception should have been accepted and provided to the jury.

1. As to the first claim, it is clear that the testimony of any one witness, if believed, is sufficient to prove any element of the case. Defendant claims, however, that the procedure of identification from photographic arrays was so faulty in this case that the testimony of the victim should have been suppressed or that judgment of acquittal should have been granted, relying upon *Simmons v. United States,* 390 US 377, 88 S Ct 967, 19 L Ed 2d 1247 (1968).

In this case the robbery occurred in the afternoon of October 21, 1970, on a street in downtown Portland. The victim observed two men approaching him in a strange manner. He concentrated on observing one of them. Altogether he was able to observe the person he identified as the defendant for four to eight seconds. He was not allowed to observe the robbers during the crime. Thereafter, he gave to the police a description of one of the assailants which corresponded with the defendant's physical characteristics. That night, the next day and again on October 29, the police showed the victim arrays of photographs which did not include the defendant and he made no identification.

In May 1971 an FBI agent showed the victim seven photographs and the victim tentatively identified a photograph of the defendant as resembling one of the robbers. The process was repeated at the sheriff's office and the victim positively identified the defendant's photograph. Again, in March 1973, a few weeks before trial, the victim identified the defendant from a group of photographs.

2. The trial court ruled that the array of photographs was not suggestive toward the defendant, and, having viewed them, we do not interfere with that finding.

The victim very emphatically identified the defendant in the courtroom and specified that his memory was from the event, not from the photographs.

*Simmons v. United States,* supra, 390 US at 384, holds:

"* * * [E]ach case must be considered on its own facts, and * * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *"

While the procedure in *Simmons* was carried out shortly after the event and in this case it was protracted, the procedure in this case was followed as fairly as possible within the legitimate needs of the police during the investigative stage. We hold that it was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," and the motions to suppress and for judgment of acquittal were properly denied.

Defendant offered into proof the expert testimony of a university faculty psychologist whose specialty is the study of visual perception. He expounded a post-Proustian "theory of *deja vu*" under which he concluded that it was possible that the witness was unintentionally conditioned by the identification process to remember the defendant's characteristics from the repeated use of his photograph and yet believe

that he remembered the defendant from the event. While the expert described the possibility of error, however, he was unable to conclude whether the victim's recognition was accurate or inaccurate. At best, he could tell the jury that, based on his expertise, the witness may be right or he may be wrong.

3. Defendant argues that eyewitness identification evidence has a built-in potential for error. We agree, but so does confession evidence, circumstantial evidence, scientific comparison, hearsay and, for that matter, expert testimony. The law does not deal with that potential for error by allowing expert witnesses to debate the quality of the evidence for the jury. *Cf. State v. Walgraeve*, 243 Or 328, 412 P2d 23, 413 P2d 609 (1966). Instead, rules of evidence operate as thresholds for reliability, lawyers argue common-sense empirical standards for credibility, judges instruct juries as to problems of credibility, and juries of our peers bring a community of experience to bear in the process of weighing evidence and assigning credibility.

4. The jury was entitled to consider the evidence under proper instruction. The court instructed the jury:

"In this case, there has been eye witness identification of the defendant. When you consider the weight to be given such testimony or the reliability of such evidence, you should consider the similarity [sic; familiarity?] of the witness with the defendant, the opportunity the witness had to make an identification, taking into consideration such matters as time, height, movement, the number of persons present and the excitement attending the event or the occasion, the susceptibility of the witness through suggestion of others or other groups, and the period of time that elapsed between the initial observation and the final identification."

The instructions state the law adequately and the jury made its decision.

Affirmed.