Argued June 21, affirmed August 27, 1979

STATE OF OREGON,
*Respondent,*
*v.*
BLUE FELIX ROVLES,
*Appellant.*

(No. 78-07-10724, CA 12917)

598 P2d 1249

David E. Groom, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Melinda L. Bruce, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Lee, Gillette and Campbell, Judges.

LEE, J.

**LEE, J.**

Defendant appeals his conviction of robbery in the second degree following a jury trial. On appeal, he makes three assignments of error: (1) the denial of his motion for investigative expenses; (2) the denial of his motion to suppress identification evidence on the ground that it was the product of a suggestive procedure; and (3) the refusal of the trial court to deliver a jury instruction on the weight and reliability of eyewitness identification evidence which we noted that the trial court gave in *State v. Calia*, 15 Or App 110, 114, 514 P2d 1354 (1973), *rev den, cert den*, 417 US 917 (1974). We affirm.

Defendant and an accomplice were charged with attacking a third man, one Thomas Crane, near a bar located in Portland. The attackers allegedly knocked Crane to the ground, where they proceeded to kick and beat him while rifling his pockets. They then took their booty and entered the bar.

These events were observed by two witnesses. The first, one William Grzymsky, was sitting near a second-story window in a hotel across the street from the tavern when the attack took place. Shortly afterward, he called the police. When the police arrived, defendant attempted to flee by running around the corner. Grzymsky, who was then standing by the window, pointed to defendant and said that he was one of the culprits. The police gave chase, apprehended defendant and brought him back to the scene of the crime where they placed him in the back of a patrol car. It was there that the second witness, one Joel Stringer, who had been sitting in a nearby car, identified defendant as one of the attackers. Crane, Grzymsky and Stringer were shown a photograph of defendant just before the suppression hearing, and all agreed that he was one of the attackers.

Defendant's first assignment contends that it was error to refuse to authorize him to incur investigative expenses pursuant to ORS 135.055(2), which provides:

"The person for whom counsel has been appointed is entitled to a reasonable sum for investigation, preparation and presentation of his case and he or his counsel may *upon cause shown*, which need not be disclosed to the district attorney prior to any hearing, secure approval and authorization of payment of such sums *as the court finds are necessary and proper* in the investigation, preparation and presentation of his case, including but not limited to travel, telephone calls, photocopying or other reproduction of documents and expert witness fees." (Emphasis supplied.)

Defendant argues that the refusal to allow such expenses denied him his statutory rights as well as his constitutional rights to effective assistance of counsel and equal protection of the laws. We disagree.

A defendant must make an adequate showing of need as a condition precedent to the receipt of judicially authorized expenses. *State v. Acosta*, 41 Or App 257, 597 P2d 1282 (1979). Defendant submitted an affidavit by his attorney and twice appeared before the trial court in an attempt to justify the expenditures. The gist of defendant's claim of need was that one of the eyewitnesses mentioned in the police report had moved from his former address and defense counsel had been unable to contact two other witnesses mentioned in the report. In addition, defendant asserted that there was a reasonable possibility that there were other unidentified eyewitnesses whom he wished to interview. Defendant's showing did not demonstrate the requisite need. Defendant did not indicate what kind of information was sought to be obtained from any of the witnesses nor did he disclose how extensive his efforts had been to locate those witnesses who were known. *See State v. Acosta, supra; Mason v. Arizona*, 504 F2d 1345, 1352-53 (9th Cir 1974), *cert den*, 420 US 436 (1975). The trial court did not abused its discretion in denying authorization of defendant's claimed expenses.

Defendant's second assignment argues that the showing of defendant's photograph to Crane, Grzymsky and Stringer just before the suppression hearing

constituted an impermissibly suggestive procedure which tainted their subsequent in-court identification. *See Simmons v. United States*, 390 US 377, 88 S Ct 967, 19 L Ed 2d 1247 (1968). The State concedes that the procedure employed was suggestive but nevertheless argues that "the proffered identification had a source independent of the * * * photographic display." *State v. Classen*, 285 Or 221, 232, 590 P2d 1198 (1979); *Manson v. Brathwaite*, 432 US 98, 97 S Ct 2243, 53 L Ed 2d 140 (1977). Under *Classen* and *Manson,* the relevant inquiry is whether the State demonstrated that an identification tainted by a suggestive procedure was nevertheless reliable despite the suggestiveness. *Classen,* 285 Or at 232-33. In determining whether the in-court identification by each of the three eyewitnesses was derived from a source independent of the photographic display, we must analyze the facts bearing on perception during each witness's first confrontation with defendant, including, but not limited to

> "* * * the opportunity that the witness had at the time to get a clear view of the persons involved in the crime and the attention he or she gave to their identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification, and, of course, the lapse of time between the original observation and the subsequent identification." *Classen,* 285 Or at 232-33.

■ Both Grzymsky and Stringer testified that despite the fact that the robbery occurred in the early morning hours, there was moonlight and a streetlight about five feet from the robbery scene. Grzymsky opined that the distance between him and the three men was about the width of a four-lane street with sidewalks. He also testified that he had not been drinking that evening. When the police arrived shortly after his telephone call to them, Grzymsky was quick to point out defendant as he began to run around the corner.

During the suppression hearing, he stated unequivocally that his identification of defendant had not been influenced by the showing of the photograph earlier that day.

Stringer observed the robbery from his car at a distance of a mere 20 to 30 feet. Unlike Grzymsky, Stringer had the opportunity of viewing the two men as they stood in front of the bar immediately preceding their attack upon Crane. Stringer testified that he was wearing his glasses that evening and had not been drinking. When the police placed defendant in the back of the patrol car following his capture, Stringer positively identified defendant as one of those who had set upon Crane only ten minutes earlier. Stringer also stated that his identification of defendant at the suppression hearing was not attributable to his seeing defendant's "mug shot" earlier that day.

As the victim of an attack which lasted three to four minutes, Crane had some opportunity to view his attackers. However, he admitted that at the time he was drunk. He nevertheless testified that he formed a mental image of the characteristics of defendant and was "ninety-five percent sure" who had attacked him even before seeing the photograph. The trial court concluded that each eyewitnesses' in-court identification of defendant was not based on seeing the photograph. We believe the State succeeded in dispelling any doubt that there was an independent basis of reliability for the identification made by these three witnesses in court. *See State v. Classen, supra,* and *Manson v. Brathwaite, supra.*

■ ■ Finally, defendant contends that it was error to refuse to deliver the instruction, which we found to be a proper statement of the law in *State v. Calia, supra.* The fact that a proposed instruction is a correct statement of law does not of itself compel that it be given in every case. Generally, the decision as to whether to give an instruction on the reliability of eye witness identification will depend on the trial judge's

[658]

perception of its desirability in each case. Here it was not an abuse of the trial judge's discretion to refuse to give it. In fact, except in unusual circumstances, it should not be given.

Affirmed.