Submitted on record and briefs January 11,
affirmed February 8, reconsideration denied June 10,
petition for review denied July 7, 1982 (293 Or 373)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN PAUL SCHROEDER,
*Appellant.*

## (No. 10-80-01863, CA 19124)

640 P2d 688

John Paul Schroeder, Salem, filed the brief pro se for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Rudolph S. Westerband, Assistant Attorney General, Salem, filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant was convicted in a jury trial of first degree burlary and first degree sodomy.[1] He appeals, making four assignments of error. We affirm.

The charges against defendant stem from an incident that occurred in June, 1979. While on her way to do her laundry in her apartment complex, the victim passed a man in the hallway. She noticed him because he was large and heavy set and had offensive odor, and she was frightened of him. When she returned to her apartment about five minutes later, the same man was in her apartment, but he then had a mask over his face and a gun. He assaulted her and rummaged through her apartment and then left.

The victim and another person separately identified defendant in a photographic line-up in February, 1980, and made in-court identifications. The victim identified defendant as the man whom she passed in the hall and who assaulted her. The other person, a woman who worked in the apartment complex, Ellen Cummins, also identified defendant as a man she had seen in the complex that day. The man had come to the door of an apartment she was cleaning and asked for someone she did not know. She noticed him in particular because he had long hair, while the residents of the apartment were "very clean-cut."

■ Defendant's first assignment of error is the denial of his motion for change of venue. When defendant was apprehended by Eugene police, his picture was published in the newspaper. Several articles and newscasts indicated that defendant was suspected of being the "masked rapist" responsible for a large number of burglaries and sexual assaults in the Eugene area over a period of more than two years. Defendant argued that the level of publicity surrounding his apprehension made it impossible for him to receive a fair trial in the Eugene area. He introduced copies of the newspaper articles and video tapes of the television newscasts concerning arrest of the "masked rapist," as well as the results of a public opinion survey and affidavits from 32 area attorneys.

---

[1] The convictions were merged, and defendant was sentenced to the custody of the Corrections Division for a period not to exceed 20 years.

ORS 131.355 provides:

"The court, upon motion of the defendant, shall order the place of trial to be changed to another county if the court is satisfied that there exists in the county where the action is commenced so great a prejudice against the defendant that he cannot obtain a fair and impartial trial."

A motion for a change of venue on the basis of ORS 131.355 is addressed to the sound discretion of the trial court. *State v. Little,* 249 Or 297, 312, 431 P2d 810, *cert denied* 390 US 955 (1968); *State v. Herrera,* 32 Or App 397, 574 P2d 1130, *rev'd on other grounds,* 286 Or 349, 594 P2d 823 (1978); *State v. Wampler,* 30 Or App 931, 569 P2d 46, *rev den* 281 Or 99, *cert denied* 436 US 960 (1978).

"In exercising its discretion, the trial court should grant a change of venue where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial. In addition, appellate courts have the duty to make an independent evaluation of the circumstances in determining whether the trial court has taken sufficient measures to assure that an accused is tried by an impartial jury free from outside influences. *Sheppard v. Maxwell,* 384 US 333, 363, 86 S Ct 1507, 16 L Ed 2d 600 (1966)." *State v. Herrera, supra,* 32 Or App at 402.

Neither the survey conducted by defendant's private investigator nor the affidavits from area attorneys purported to provide a random sampling of the opinions of either the public or the attorneys in the Eugene area. In addition, the survey was not conducted on neutrally-phrased questions which would elicit a useful response.[2]

The media coverage did include defendant's name and his picture along with the information that he was being investigated to determine if he was the "masked rapist" responsible for up to 120 crimes in the area. We cannot say, however, that the media coverage of defendant's arrest was so prejudicial and so pervasive that it was

---

[2] Each person was asked: (1) "Are you a resident of Lane County?" (2) "Are you aware that criminal charges are now pending against an individual named John Paul Schroeder which criminal charges accuse John Paul Schroeder of being the so-called Masked Rapist responsible for a large number of sexual crimes?" (3) "Do you believe in view of the publicity and newspaper coverage regarding these cases that John Paul Schroeder can obtain a fair, impartial trial in Lane County at the present time?"

an abuse of discretion to deny the motion for a change of venue. We note also, as part of our responsibility to determine whether the trial court took sufficient measures to assure that the accused received a fair trial, that we have reviewed the transcript of the voir dire, and it appears that the defense did not encounter difficulty in finding jurors who were impartial.

■■ Defendant next contends that the in-court identifications by the victim and Cummins, as well as evidence of the pre-trial photographic identifications, should have been excluded because the photographic identifications were conducted in an unduly suggestive manner. First, he contends that the photographs used in the identification process were themselves suggestive, because the image of defendant was larger than that of any of the other individuals. The trial court found that the photographs were "of remarkably similar people." We agree. The image of defendant is somewhat larger than the others; the photos vary in that some were taken at closer range than others. However, they are of quite similar-looking individuals, and defendant is not emphasized in such a way as to make the process unduly suggestive.

Defendant also argues that the comments made at the time the photographs were shown to the victim and Cummins made the procedure unduly suggestive. As to the victim, we disagree. Although she had been told that a suspect had been arrested, she was not told that the suspect's picture was included in the photographic line-up she was given. She testified that she presumed from the fact that the police asked her to look at the photographs that there must have been a picture of a suspect included, but she said she did not feel that she was required to identify one of the photographs. It may well be that, whenever a witness is asked to look at a group of photographs, there will be some expectation that the culprit will be included. However, we find that the procedure involved in the victim's identification of the defendant in the photographic throw-down was not impermissibly suggestive.

Cummins, on the other hand, testified that she was told by the police that the group of photos she was to look

at contained the picture of the person suspected of having committed the assault. *State v. Classen,* 285 Or 221, 590 P2d 1198 (1979), characterized this type of statement to a witness as suggestive. The court then indicated that such a statement might lead a witness to feel compelled to make an identification of one of the photos, even if only by choosing the one who is the least dissimilar to the criminal. Because the Cummins identification procedure was unduly suggestive, we must turn to the question whether

> "* * * 'the proffered identification has a source independent of the suggestive confrontation' or photographic display, * * * or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." *State v. Classen,* 285 Or at 232.

■ Applying the factors enumerated in *Classen* to this inquiry, we conclude that the identification was made on the basis of a source independent of the suggestive procedure. The witness had a clear view of the man who came to the door of the apartment that day, and she spoke with him face to face. Although the conversation was short, lasting from 30 seconds to two minutes, the witness paid particular attention, because she was suspicious of this long-haired man coming to see the "clean-cut" residents of the apartment. She gave a description to the police right after the assault was reported. Although there was an interval of eight months between the crime and the identification in the throw-down, Cummins identified defendant without hesitation and was certain of that identification. The trial court did not err in admitting the in-court identification and the evidence of the photographic identification by the victim or Cummins.

■ Defendant next assigns error to the admission of a mask found in his possession at the time of his arrest. The mask appeared to have been made from a shirt sleeve with holes cut for the eyes. The victim did not identify the mask at trial. She had, however, described the mask worn by her assailant. Her description was general, but not inconsistent with the mask found. Defendant argues, first, that identification of the mask as that worn during the attack was required before the mask was admissible. That type of

identification is not necessary. *See State of Oregon v. Lanegan,* 192 Or 691, 236 P2d 438 (1951); *State v. Howard,* 6 Or App 230, 486 P2d 1301, *rev den* (1971).

■ Defendant also contends that the mask should not have been admitted, because whatever probative value it had was outweighed by its prejudicial effect. The decision to admit the mask was within the range of the trial court's discretion. *See State v. Madison,* 290 Or 573, 624 P2d 599 (1981); *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975).

■ Defendant's final assignment of error is the refusal of the trial court to give his requested instruction that the jury should view eyewitness identification with caution.[3] Although in *State v. Calia,* 15 Or App 110, 514 P2d 1354 (1973), *rev den, cert denied* 417 US 917 (1974), we indicated that such an instruction was a correct statement of the law, we later held in *State v. Rovles,* 41 Or App 653, 658-59, 598 P2d 1249 (1979):

> "Generally, the decision as to whether to give an instruction on the reliability of eye witness identification will depend on the trial judge's perception of its desirability in each case. Here it was not an abuse of the trial judge's discretion to refuse to give it. In fact, except in unusual circumstances, it should not be given.

We do not find unusual circumstances in this case which would indicate that it was an abuse of the trial court's discretion to refuse the instruction.

Affirmed.

---

[3] Defendant's *requested instruction was as follows:*

"In this case there has been eye witness identification of the defendant. When you consider the weight to be given such testimony or the reliability of such evidence, you should consider the familiarity of the witness with the defendant, the opportunity the witness had to make an identification, taking into consideration such matters as time, height, movement, the number of persons present and the excitement attending the event or the occasion, the susceptibility of the witness through suggestion of others or other groups, and the period of time that elapsed between the initial observation and the final identification."

This instruction is derived from *State v. Calia, supra,* 15 Or App at 114.