Argued and submitted November 12, 1982, affirmed March 2, reconsideration
denied May 13, petition for review denied June 21, 1983 (295 Or 259)

STATE OF OREGON,
*Respondent,*

*v.*

RANDALL BRENT WOODFIELD,
*Appellant.*

(125,510, 125,511, 125,512, 125,513; CA A22732)

659 P2d 1006

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, Thornton, Senior Judge, and Van Hoomissen, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals from his convictions for murder, attempted murder and two counts of first degree sodomy. We affirm.

Defendant was accused as being the "I-5 Bandit," an individual responsible for several serious crimes along that interstate highway. We repeat the facts only as they are necessary to explain the assignments of error. Defendant first contends that the court erred in denying his motion to call Lawrence Moore as a witness. Moore had been convicted of murders in the Oregon Museum Tavern in Salem. The purpose of calling him was to have two paramedics who were called to the scene in this case testify that there is a "resemblance" between Moore and a man they saw a few blocks from the scene shortly after the incident. The issue in this case at trial was the identity of the attacker. The surviving victim had given inconsistent descriptions of the man at various times following the attack. The defense wanted to show that she was mistaken in her identification of defendant.

The trial court did not err in denying the motion. Defendant did not want to call Moore to testify, but only for identification. Both of the paramedics testified that they were unable to see the facial characteristics of the man they had observed on the street. They had been suspicious of him, because he was wearing clothing similar to that described by the victim and because he ran away when he saw them looking at him. They both testified that they would not be able to identify the man if they were to see him again. When shown a sketch of Moore, one of the paramedics said that the man resembled the man he had seen on the street but that he could say nothing more definite. When shown photographs of other men that had been eliminated by the victim as suspects, the paramedic noted that those men also resembled the man he had seen on the street that night.

We see no legitimate purpose in bringing Moore before the jury in this case. The fact that there was a man acting suspiciously on the street near the crime who resembled someone who had been convicted of other crimes had only marginal relevance. Defendant does not contend

that Moore was ever a suspect or that he should have been. Whatever relevance there might have been was certainly outweighed by the possibility of confusion created by parading Moore in front of the jury with so little to connect him with the crimes with which defendant was charged.

■ Defendant's second assignment of error concerns the trial court's failure to give, *sua sponte,* an instruction on the unreliability of eyewitness identification. Defendant contends that the failure to give the instruction should be considered under ORAP 7.19(5) as an error of law apparent on the face of the record. Defendant bases this claim on the fact that the victim gave conflicting descriptions of the attacker and had not been able to identify him from a photograph, although she later identified him in a line-up. Defendant does not, however, assign error to the admission of the victim's in-court identification of defendant or to evidence of her previous identification of him.

Although the instruction on eyewitness identification was approved in *State v. Calia,* 15 Or App 110, 514 P2d 1354 (1973), *rev den, cert den* 417 US 917 (1974), we held in *State v. Rovles,* 41 Or App 653, 658-59, 598 P2d 1249 (1979), that:

> "* * * The fact that a *proposed* instruction is a correct statement of law does not of itself compel that it be given in every case. Generally, the decision as to whether to given an instruction on the reliability of eye witness identification will depend on the trial judge's perception of its desirability in each case. Here it was not an abuse of the trial judge's discretion to refuse to give it. In fact, except in unusual circumstances, it should not be given." (Emphasis supplied.)

*See State v. Schroeder,* 55 Or App 932, 938, 640 P2d 688, *rev den* 293 Or 373 (1982). Here, the instruction was not even "proposed." This is not the type of error, if error at all, that has been considered "plain error" justifying consideration even though not preserved. *State v. Randolph,* 49 Or App 399, 619 P2d 680 (1980) (defendant incarcerated for offense that did not carry jail term); *See State v. Willy,* 36 Or App 853, 585 P2d 762 (1978) (total lack of evidence on essential element of crime).

■ Defendant next contends that it was error for the trial court to give Uniform Jury Instruction 202.03, based

on the language of ORS 44.370, telling the jury that every witness is presumed to speak the truth. Defendant argues on appeal that the instruction was improper in this case because there were 37 state's witnesses and only six witnesses for defendant. There was no such objection made at trial on that ground. Defendant's exception to the instruction was:

> "Also, we except to the court's giving of the instruction on a witness false in part on the grounds that there is no evidence in this case of any witness being false."

Defendant now argues that that exception, along with the statement that followed, raised this issue. We do not see how.

After the exception quoted above, counsel for defendant stated:

> "Third, we except to the burden of proof of each party as given by the court because the defendant has no burden of proof in this case."

This exception relates to a different instruction. We hold that this alleged error was not preserved. We further note, in any event, that the trial court did instruct the jury that they were not to simply count the witnesses for each side and make their determination on that basis.

Defendant's fourth assignment of error is that the court erred in refusing to give the "less satisfactory evidence" instruction. Defendant's request for this instruction was based on the fact that the state called two "prestigious experts" to testify concerning tests of the bullets found in defendant's house and at the scene and a pubic hair found at the scene. They described the tests and testified that those tests were generally accepted in the scientific community. They did not themselves, however, conduct tests on the exhibits in this case; employes of the State Police crime laboratory had performed the actual tests on the physical evidence. Defendant would treat their testimony as "less satisfactory evidence," because those employes had considerably less experience in conducting the tests than the "prestigious experts" called by the state.

■ ■ In *State v. Brock,* 53 Or App 785, 790, 633 P2d 805 (1981), *aff'd* 294 Or 15, 653 P2d 543 (1982), we said that the

instruction should be given when requested and "otherwise appropriate."

> "* * * To be appropriate, there must be evidence to support the instruction. If there is no basis in the record to conclude the state had evidence not produced which was arguably stronger than the proof offered, then it is not error to refuse the instruction. *State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980); *State v. Gwyther,* 4 Or App 473, 479 P2d 248, *rev den* (1971)."

The only indication in this record is that the state did *not* have any evidence that was not offered. The "prestigious experts" testified that they had not conducted analysis of the bullets or the hair. There is no contention that the experts who did conduct the tests were not qualified to do so. There was no error in the court's refusal to give the instruction.

■ Defendant's final assignment of error is the imposition of a 50-year minimum sentence. Again, this issue was not raised in the trial court. At the sentencing hearing, the only discussion concerned the question whether the court could impose consecutive sentences with a life sentence for murder. There was no objection to the minimum sentence imposed. We will not consider the matter.

Affirmed.