Argued and submitted June 10, 1983, affirmed as modified January 11, reconsideration denied May 11, petition for review denied June 19, 1984 (297 Or 339)

## STATE OF OREGON,
*Respondent,*

*v.*

## ERNEST LEROY SMITH,
*Appellant.*

## (C 81-02-30858; CA A22787)

675 P2d 1060

Steven H. Gorham, Salem, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmaher, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for attempted murder, first degree assault and first degree robbery. We delete the minimum sentence imposed but otherwise affirm the judgment.

In November, 1980, Ms. Hutt was robbed and severely beaten by a man who had gained access to her Portland home by representing to her that he was interested in buying her house. One week later, she helped police with a composite picture of her assailant. The following day, police officers showed her some photographs to see if she could identify her attacker. She was unable to do so. On December 4 and December 9, 1980, police showed her more pictures, but she could not select one. In late January, police brought yet another group of photographs to show her. This time she positively identified defendant as her assailant.

Defendant, who conducted his own defense with the aid of a legal adviser, first assigns as error the trial court's denial of his pretrial motion requesting access to the Multnomah County Courthouse Law Library. We are not able to review fully this assignment of error, because defendant did not designate the transcript of the hearing on his motion as part of the record on appeal. All that we have before us pertaining to this alleged error is the trial court's order denying the motion in part and allowing it in part. The trial court ordered:

"* * * [T]he defendant's motion for access to the Legal Library situated in the Multnomah County Courthouse be and the same is hereby denied.

"IT IS FURTHER ORDERED that the defendant's motion for access to the legal library located in the Multnomah County Jail at Rocky Butte be and the same is hereby allowed, and that the defendant is also to have access to the books provided by his advisor, Kenneth Lerner."

Thus, defendant was not, as he asserts, denied access to the Multnomah County Courthouse Law Library. Defendant's "legal advisor," attorney Lerner, was specifically authorized to supply defendant with materials from the county library in addition to the materials in the Rocky Butte Jail library. In effect, defendant is complaining that the trial court erred in refusing him *personal* access to the county law

library. Although a defendant may not be penalized for exercising his constitutional right to represent himself, *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975), "neither is he entitled to special treatment or benefits not afforded to defendants with counsel." *State v. Addicks,* 34 Or App 557, 560, 579 P2d 289, *rev den* 284 Or 80a (1978). Defendant had ample access to legal source material in both the jail library and the county library. There is no merit to his first assigned error on the record before us.

■ ■     Next, defendant attacks the trial court's refusal to exclude the victim's in-court identification of him as her assailant. *State v. Classen,* 285 Or 221, 590 P2d 1198 (1979), provides for a two-stage test for determining whether a challenged identification is admissible. First, the court must determine whether the pretrial process leading to the offered identification was unduly suggestive. If it was, the prosecution must satisfy the court that the proffered identification has a source independent of the suggestive procedure. The trial court found that the process leading to the victim's identification was not suggestive and did not reach the second stage of the *Classen* formulation. We have reviewed the relevant portions of the record and agree with the trial court.

■ ■     Defendant contends that the identification procedure utilized by a detective on one occasion should be presumed suggestive, because Detective Johnson misplaced the photographs he showed Ms. Hutt on December 9, 1980. That display, therefore, was not available for examination by the trial court. Defendant urges that because the police failed to preserve the array, we must presume that it was suggestive. *See Branch v. Estelle,* 631 F2d 1229 (5th Cir 1980). We decline to consider this contention on its merits, because it was not raised below. It was defendant's obligation to frame the issues at the omnibus hearing. *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975); *State v. Carter/Dawson,* 34 Or App 21, 25, 578 P2d 790 (1978), *modified* 287 Or 479, 600 P2d 873 (1979).

■     In his third assignment, defendant contends that the trial court erred when it denied his motion to appoint an expert on the reliability of eyewitness identification. In *State v. Calia,* 15 Or App 110, 514 P2d 1354 (1973), *rev den, cert den* 417 US 917 (1974), we rejected a similar argument and explained that "[although] eyewitness identification evidence

has a built-in potential for error * * *, [t]he law does not deal with that potential for error by allowing expert witnesses to debate the quality of the evidence for the jury." 15 Or App at 114. *See also State v. Schroeder,* 62 Or App 331, 661 P2d 111, *rev den* 295 Or 161 (1983); *State v. Goldsby,* 59 Or App 66, 70, 650 P2d 952 (1982). The trial court correctly denied defendant's motion.

■  Defendant next attacks the trial court's denial of his motion to require the state to "elect" an offense to be submitted to the jury. Citing *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), defendant asserts that the court should have compelled an "election" because this case involves multiple charges arising out of a single act. Defendant misinterprets *Cloutier,* where the issue was "merger," not "election." The court expressly said that "[i]t is the *dispositional* phase that concerns us here." 286 Or at 590. (Emphasis supplied.) "Election," on the other hand, usually arises when the state has indicted for more than one offense, or for all offenses which occurred more than one time, and thus must "elect" which offense or date is to be submitted to the jury. *See State v. Pace,* 187 Or 498, 212 P2d 755 (1949); *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290 (1922).

■  We rejected an argument analogous to the one defendant makes here in *State v. Tron,* 39 Or App 603, 592 P2d 1094 (1979). There, we explained that "[t]he time to deal with merger, if at all, is after the verdict." 39 Or App at 605. The trial court did not err in denying defendant's motion.

■  Next, defendant maintains that the court should not have permitted two police officers to testify, because they disobeyed a subpoena duces tecum to produce their field notes. Defendant again fails to quote verbatim the provisions of the subpoenas he allegedly caused to be served on the police officers. Moreover, we have been unable to locate those subpoenas in the record. Consequently, we do not know precisely what defendant requested that the officers produce or whether they disobeyed a validly issued and served subpoena duces tecum, as he asserts. In any event, in framing his assignment of error, defendant refers to "field notes." Police officers' fragmentary field notes are not discoverable. *State v. Morrison,* 33 Or App 9, 575 P2d 988 (1978); *State v. Bray,* 31 Or App 47, 569 P2d 688 (1977). Therefore, even if defendant is

correct in his assertion that the officers disobeyed a validly served subpoena duces tecum, the trial court did not err when it permitted them to testify.

As his sixth assigned error, defendant complains that the trial court erred when it permitted the prosecutor to refer continually to defendant's not having lived at home for six months prior to trial. Again, defendant fails to cite verbatim the testimony about which he complains, ORAP 7.19(2), and we refuse to search the voluminous record for this alleged error. *State v. Mendenhall,* 53 Or App 174, 631 P2d 791 (1981); *State v. Cooney,* 36 Or App 217, 222, 584 P2d 329 (1978); *State v. Burris,* 27 Or App 835, 557 P2d 701, *rev den* 277 Or 491 (1977); ORAP 7.19(5).[1]

Next, defendant asserts that the trial court should have granted defendant's motion to suppress the items seized by police during a search of a Denver, Colorado, hotel room that defendant shared with his girlfriend, Ellis, at the time of his arrest. Defendant refused to give police his consent to search the room. Ellis, however, did consent to the search, and several of the items seized during that search were introduced at trial. Defendant argues that, because no evidence was introduced establishing that he and Ellis had an agreement that she was "authorized" to use or handle defendant's personal effects, the police officers violated defendant's Fourth Amendment[2] rights by failing to obtain a search warrant. We disagree.

Although defendant refused when police asked his permission to search the room, he acknowledges that the room actually was rented by Ellis. Defendant also conceded at the suppression hearing that he told police that he did not know whether he was "authorized" to give them permission to search, but that Ellis might be willing to consent to the search. Ellis consented both orally and in writing to the search of her hotel room. We conclude that her consent authorized police to search without first obtaining a warrant. *See State v. Frame,* 45 Or App 723, 609 P2d 830, *rev den* 289 Or 587, *cert den* 450 US 968 (1980) (wife's consent sufficient to authorize search of

---

[1] For the same reason, we do not consider defendant's eleventh assignment of error.

[2] Defendant bases his argument solely on the federal constitution.

house shared with defendant). The trial court did not err when it denied defendant's motion to suppress. *See also United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974); *Frazier v. Cupp,* 394 US 731, 89 S Ct 1420, 22 L Ed 2d 684 (1969); *State v. Gordon,* 23 Or App 587, 543 P2d 321 (1975), *rev den* (1976).

In his eighth assignment, defendant maintains that the trial court erred when it admitted in evidence a jacket that he bought two months after the assault. He contends that it was irrelevant. We review to determine whether the admission of the jacket constituted an abuse of the trial court's discretion. *See State v. Miller,* 53 Or App 493, 632 P2d 493 (1981).

The prosecutor argued at trial that the coat was relevant, because the victim had described her assailant as being dressed in a western-cut, heavy, brown corduroy coat, with sheepskin pile lining. Defendant bought the coat admitted into evidence in Denver, and police seized it when they searched the hotel room. Although it was not the same coat that the victim's assailant had worn, it was nearly identical to the coat described by the victim. In addition, one of defendant's neighbors testified that defendant customarily wore that type of coat.

OEC 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, admission of the jacket established defendant's proclivity for wearing clothing similar to that worn by the victim's assailant. It therefore was relevant evidence, because it had a tendency to establish ultimately defendant's identity as the perpetrator of the assault. The trial court did not abuse its discretion when it admitted the jacket.

In his ninth assigned error, defendant attacks the prosecutor's having certain exhibits identified by one of the police officers prior to the admission of the exhibits into evidence. Defendant did not object to the prosecutor's actions at trial and, therefore, we decline to consider this alleged error on its merits. ORAP 7.19(5).

Defendant next contends that the court erred in not recessing the jury deliberations. The jury began deliberating

at 2:19 p.m. and announced a verdict at 1:24 a.m., after continuous deliberation. The jury foreman informed the court at approximately 1 a.m. that the jury had arrived at a verdict on two of the charges but was unable to reach a verdict on the third charge. Defendant's attorney asked that the jury be retired for the night and resume deliberation the next day. The court inquired of the jurors if they wished to deliberate further on the third charge and received an affirmative response from 11 of them. The court told defendant's attorney that he would allow the jury to deliberate for an additional 30 minutes. The jury returned with three verdicts at 1:24 a.m. The court did not abuse its discretion in denying defendant's request to retire the jury.

In this assignment of error, which defendant characterizes as improper jury deliberations, he also argues that the court did not properly determine if the jury had seen him being escorted to the courtroom under guard. He contends that the court should have examined each juror to determine if any juror saw defendant being taken to court under guard. The court held an evidentiary hearing and examined the guards under oath. The court concluded that it was unlikely that any juror saw defendant being escorted to the courtroom. During the hearing, defendant specifically requested that the court not question each juror. Defendant cannot now complain that the court erred in failing to follow a procedure he specifically objected to.

Defendant next attacks the trial court's finding that he is a dangerous offender, arguing that the statute controlling that determination is unconstitutional as applied to him. ORS 161.725 provides in pertinent part:

"The maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(1) The defendant is being sentenced for a Class A felony, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(2) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, has been previously convicted of a felony not related to the instant crime as a single criminal episode, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"* * * * *"

The procedure for determining the conclusions called for in ORS 161.725 is controlled by ORS 161.735:

"(1) Whenever, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and a psychiatric examination. The court may appoint one or more qualified psychiatrists to examine the defendant or may order that he be taken by the sheriff to a state hospital designated by the Mental Health Division for the examination.

"* * * * *

"(3) The psychiatric examination shall be completed within 30 days, subject to additional extensions not exceeding 30 days on order of the court. The psychiatrist shall file with the court a written report of findings and conclusions, including an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"* * * * *

"(5) Upon receipt of the psychiatric examination and presentence reports the court shall set a time for a presentence hearing, unless the district attorney and the defendant waive the hearing. At the presentence hearing the district attorney and the defendant may examine the psychiatrist who filed the report regarding the defendant.

"(6) If, after considering the presentence report, the psychiatric report and the evidence in the case or on the presentence hearing, the court finds that the defendant comes within ORS 161.725, the court may sentence the defendant as a dangerous offender.

"* * * * *"

■■ Defendant argues that the provisions of ORS 161.735(3) violate the Fourteenth Amendment to the United States Constitution. His argument is based on his assertion that the psychiatric report required by ORS 161.735(3) is

unreliable, because psychiatry cannot predict future dangerousness. Defendant concludes that any prediction of dangerousness based on such an unreliable report would be standardless and arbitrary and, consequently, a violation of his federal due process rights. We disagree.

■        In *Jurek v. Texas,* 428 US 262, 96 S Ct 2950, 49 L Ed 2d 929 (1976), the Supreme Court rejected this precise argument. At issue was a Texas statute which provided for the death penalty if a jury determined, among other things, that a criminal defendant would again commit criminal acts of violence and thus constitute a continuing threat to society. The Court reasoned:

> "* * * [T]he petitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless. It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. * * *" 428 US at 274-76. (Footnotes omitted.)

The fact that a penal statute is based on a prediction of future dangerousness does not render the statute violative of the Due Process Clause.

■        Defendant next argues that the statute is unconstitutionally vague in that it does not define what a "severe personality disorder" is, nor does it define "a propensity toward criminal activity." When a statute is attacked as vague, it is our obligation to determine whether the statute can be saved by a judicial interpretation that gives it the required definiteness. *State v. Robertson,* 293 Or 402, 411, 649 P2d 569 (1982). The meaning of the statute here is easily

discernible by reading its plain language. "Severe" is generally defined as: "Of a greater degree or an undesirable or harmful extent: marked, serious." "Propensity" is "a natural inclination." Webster's Third New International Dictionary (1976).

Defendant next argues that the trial court utilized an unconstitutional procedure in reaching its conclusion that defendant is a dangerous offender. After the verdict the court appointed a psychiatrist, Dr. Bowerman, to examine defendant in accordance with ORS 161.735(3). Defendant, however, refused to see the psychiatrist. Thereafter, the state requested the doctor to review several previously prepared reports regarding defendant and to form a conclusion based on those reports.

The reports reviewed were of interviews with defendant ranging from 1956 to 1981, including a report based on a 1972 interview between him and defendant. The first sentence of that report states that "Smith was evaluated for a reduction in custody." Thus, when defendant was interviewed by Dr. Bowerman in 1972, it was under the assumption that the interview could result in a possible reduction of his time of incarceration. Defendant was not given *Miranda* warnings before that interview or any of the other interviews resulting in the reports relied on by Dr. Bowerman.

Defendant argues that the state's use of the psychiatrist's report and testimony at the sentencing proceeding violates the principle of *Estelle v. Smith*, 451 US 454, 101 S Ct 1866, 68 L Ed 2d 359 (1981), where the defendant was examined prior to trial by a court-appointed psychiatrist in order to determine whether he was competent to stand trial. The defendant was convicted of murder in a subsequent jury trial. During the penalty phase of the proceedings, the state introduced testimony by the court-appointed psychiatrist. The defendant was sentenced to death. The Supreme Court held that the state should not have introduced the psychiatrist's findings, because his conclusions were based on statements made by the defendant without his having been given *Miranda* warnings. The Court's holding rested in part on its conclusion that introducing the psychiatrist's findings violated the defendant's Fifth Amendment privilege not to be compelled to incriminate himself. Although defendant's argument has merit, we conclude that, if it was error to admit Dr.

Bowerman's report, the error was harmless beyond a reasonable doubt.

The Supreme Court explained in *Estelle* that, although the state could not use statements taken in violation of the defendant's constitutional rights to establish his propensity for future violence, it could utilize such factors as the range and severity of the defendant's past criminal conduct, his age and the circumstances surrounding the crime for which he is being sentenced. An examination of those factors here convinces us that the trial court had a basis for reaching the same conclusion without Dr. Bowerman's findings and that that conclusion is overwhelmingly supported by the record, even without his report.

Defendant perpetrated a violent attack on the victim. After spraying Ms. Hutt with mace, he threatened her with a gun. He forced her to lie face-down on the floor and tied her hands behind her back. Although the record is unclear as to whether defendant used a gun or a hammer, he beat her severely. She was in critical condition when she arrived at the hospital. The jury concluded that, in fact, defendant had attempted to murder her. In addition, he has at least six felony convictions, including another violent assault and robbery on a woman and an assault with intent to kill a police officer.

The trial court concluded at the sentencing proceeding that, even if Oregon statutes do not require a psychiatric report, "this case would stand clearly as sufficiently being loaded with evidentiary matters from which the court could make its own conclusion that Mr. Smith is a dangerous offender." Given the violent circumstances surrounding the instant offenses for which defendant was convicted and his lengthy history of criminal activity, the court had ample evidence before it from which to conclude that defendant is a dangerous offender entirely aside from the psychiatric evidence.

Finally, defendant asserts, and the state concedes, that the trial court erred when it imposed a minimum mandatory sentence pursuant to the provisions of ORS 161.610. *State v. Wedge,* 293 Or 598, 652 P2d 773 (1982). Pursuant to our authority to modify the judgment in accordance with

controlling law, Oregon Constitution, Article VII, section 3, we modify the trial court's judgment by deleting the mandatory minimum sentence.

Judgment modified to delete the minimum sentence; affirmed as modified.