Argued and submitted June 26, affirmed September 6, 1989

# STATE OF OREGON,
### *Respondent,*

*v.*

# EDWARD J. GALLUP, SR.,
### *Appellant.*

## (J87-1760; CA A49289)

779 P2d 169

Kenneth A. Morrow, Eugene, argued the cause for appellant. With him on the brief was Morrow, Monks & Sharp, P.C., Eugene.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from his conviction for sodomy in the first degree. ORS 163.405(b). He assigns error to the trial court's refusal to grant his motion for change of venue and to three evidentiary rulings made at trial. The trial court did not abuse its discretion in refusing to grant defendant's motion for change of venue and, if the court erred in making one of the evidentiary rulings, that error does not require reversal. Accordingly, we affirm.

Defendant owned and operated a preschool in Roseburg. His wife operated a separate private kindergarten in Roseburg, and his son operated another private preschool in Winston. In 1983, defendant's son was arrested on a sex crime charge. In 1987, defendant was indicted in this case for sexually assaulting a young boy who was a student at his preschool, and his son was indicted on six separate charges for sexually assaulting six other preschool students. Defendant's son was tried in December, 1987, and found guilty of three of the six charges against him. In February, 1988, defendant and his wife were indicted on new charges for sexually assaulting another child. All of those events were highly publicized in Roseburg, where defendant's trial was to be held.

Defendant's first assignment is that the trial court should have granted his motion for change of venue, because the publicity precluded a fair and impartial trial. The trial court allowed counsel to submit a written questionnaire to each of the 60 members of the jury panel, which they filled out at the beginning of the trial. Thereafter, each of them was questioned individually. Twenty of the original 60 prospective jurors were excused for cause. Fourteen prospective jurors had not heard of the other criminal charges against defendant, his son and his wife. Only 13 of those had heard nothing of the charges against the Gallups, and only 4 of the 12 jurors who were seated had heard nothing of the cases. Although eight of those jurors had heard about the charges against defendant and his family, they all stated during *voir dire* that what they had heard would not influence their decision in the case and that they would decide purely on the evidence presented during trial.

In *State v. Schroeder,* 55 Or App 932, 640 P2d 688, *rev den* 293 Or 373 (1982), we held that whether a change of venue

is necessary is a matter of trial court discretion and that the court acted within its discretion by refusing to change venue, even though the media had pegged the defendant as "the masked rapist," a notorious criminal in the Eugene area who had raped some 120 women. We also held that publicity alone is not a sufficient ground for reversal of a trial court's decision not to change venue, so long as the trial court was able to find jurors who were impartial. We have reviewed the record to determine, independently, *State v. Herrera,* 32 Or App 397, 402, 574 P2d 1130 (1978), *rev'd on other grounds,* 286 Or 349, 594 P2d 823 (1979), whether the trial court took sufficient measures to assure that defendant would be tried by an impartial jury and are satisfied that the painstaking procedure followed by the court achieved that objective. Accordingly, the court acted within its discretion in denying a change of venue.

■ Defendant's next contention is that the court erred when it overruled his objection to testimony by the state's expert witness, a psychologist, that the single most specific symptom of a sexually-abused child is that the child engages in sexual activity with another child. Defendant's objection, made after the first question had been answered, was "to any discussion of what he claims are symptoms." The objection was overruled. The next question, calling for an explanation, was answered before defendant requested a continuing objection to any reference to "symptoms." In response, the trial court instructed the prosecution that it should use the word "characteristic," rather than the word "symptom." Defendant did not object to the further questions asking whether certain behavior exhibited by the child was characteristic of a sexually-abused child, but asked for an instruction that the jury disregard the answer to the question to which he objected. Although the cumulative evidence of "characteristics" would probably be inadmissible under *State v. Hansen,* 304 Or 169, 743 P2d 157 (1987), because it comes close to being profile evidence, defendant did not object to any of that testimony. In fact, his own expert testified that certain conduct of a child was not characteristic of a sexually abused child. Assuming that defendant's objections were well-taken, the first objection, if it had been sustained, would have had little or no effect, because the jury had already heard the answer and the question could, and presumably would, have been rephrased, as were subsequent questions, using the word "characteristic"

instead of "symptom." In a trial with over 2000 pages of transcript, there is little likelihood that the error affected the verdict. *See State v. Hansen, supra,* 304 Or at 180. Accordingly, it is not reversible error. *See* OEC 103(1).

Defendant's third assignment is that the trial court erred in sustaining the state's objection to defendant's question on re-direct examination of defendant's expert, also a psychologist, asking him why defendant flew to Minnesota to see him. On cross-examination, the prosecution had impeached the expert's credibility by showing that he was being paid by defendant and that he had met in private with defendant in Minnesota, where the expert resides. On re-direct, after sustaining the objection, the court allowed the expert to testify that defendant had gone to Minnesota to submit to psychological testing, but did not allow him to testify to the results or that, as a matter of practice, he will not testify as an expert for a defendant who has not passed his psychological tests or if he is not satisfied that the person did not commit the crime.

■ During the direct examination of the psychologist, the trial court ruled inadmissible, under *State v. Hansen, supra,* proposed testimony that the doctor had determined that defendant had none of the characteristics of a person who sexually abuses children. No error is assigned to that ruling. The court's limiting the doctor's testimony on re-direct to the fact that, as a requirement of his involvement as an expert witness in this case, he had defendant undergo psychological testing and assessment, without allowing testimony about the results of the testing and assessment, is consistent with its prior ruling. Defendant's argument is that the state "opened the door" to the proposed evidence when it brought out on cross-examination that defendant had visited the doctor in Minnesota, leaving it open as to why he had done so and suggesting that defendant made the trip to cement an alliance with the witness. The court's limiting the witness to the reason for the trip and not permitting otherwise inadmissible evidence was within its discretion, even though the otherwise inadmissible evidence might have been marginally relevant to overcome a showing of the witness' bias. *See* OEC 609-1. Even assuming that the evidence had become relevant on cross-examination to rehabilitate the witness, the essence of the testimony would have been that the expert had determined

that defendant was not a sex abuser and, therefore, was not guilty. That question is for the jury, and the probative value of the evidence to overcome the bias of the witness would be outweighed by its prejudice to the state. *See* OEC 401, OEC 403.

■      Defendant's final contention is that the court erred in overruling his objection to the statement by the state's psychologist that children who have been sexually abused will very often not report the incident because they have been threatened by the abuser. Such testimony is admissible under *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983), because it is relevant to explain the child's failure to report the crime. Other testimony was introduced that defendant had threatened the victim. The prejudicial effect of the expert's hypothetical explanation does not outweigh its probative value; the court did not err in admitting it.

Affirmed.