472 August 21, 2024 No. 582

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN ROBERT VANNORMAN,
*Defendant-Appellant.*

Douglas County Circuit Court
22CR13603; A179949

Frances Elaine Burge, Senior Judge.

Submitted March 8, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emma McDermott, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of harassment, ORS 166.065(3), for spitting on his girlfriend. Defendant raises two assignments of error. In his first assignment of error, defendant contends that the trial court erred in overruling his objection to the prosecutor's argument that relied on facts not in evidence. Assuming without deciding that the trial court erred in overruling defendant's objection, we nonetheless affirm because any error was harmless. In his second assignment of error defendant argues that the trial court erred by not giving a "less satisfactory evidence" instruction. Defendant argues that the current case law on "less satisfactory evidence" is plainly wrong because the cases interpreting the relevant statute, ORS 10.095(7), (8),[1] were decided before both *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *State v. Payne*, 366 Or 588, 468 P3d 445 (2020). We conclude that the trial court did not err, and accordingly affirm the judgment of the trial court.

Defendant was involved in a domestic dispute with this girlfriend, K, that began in defendant's home. When K left defendant's home, she walked along the shoulder of a nearby highway. Defendant followed her in his truck and spat on her. Officer Brown responded to a call about the incident and initially made contact with K on the side of the highway, where Brown activated his bodycam and interviewed K. She gestured to a "white substance on her overalls" and told Brown that defendant had spat on her. Brown did not photograph or swab the white substance or collect the overalls.

With his bodycam recording, Brown then interviewed defendant at defendant's home. Defendant initially suggested that he was unaware why Brown was interviewing him or what incident Brown was asking him about.

---

[1] ORS 10.095 provides, in relevant part,

"(7)  That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore,

"(8)  That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

When Brown clarified that the interview concerned defendant's domestic dispute with K, defendant stated that K had "flipped out" and threw a bench at him. Defendant later said that there was a confrontation in the bathroom in which K grabbed defendant by the beard and he responded by grabbing K's hair. He also stated that he later drove his truck up to approach K and told her to take all of her "shit" and to move out.

At trial, before closing argument, defendant requested a less satisfactory evidence instruction, arguing in relevant part, that police should have taken photos and swabs of the "white substance" on K's clothing, and that those photos and swabs would have been stronger evidence of defendant's guilt. The trial court denied that request. Then, during the state's closing argument, the prosecutor stated that "[w]hen…Brown first arrives [defendant] says nothing happened between [defendant and K]. There wasn't anything." Defense counsel objected to that statement, arguing that "[t]hat was not in the body cam," and the trial court sustained defendant's objection. The prosecutor immediately continued "When Deputy Brown arrived [defendant] said nothing had happened. He just grabbed her hair." Defense counsel objected on the same grounds, but this time the trial court overruled the objection. Then, after the court overruled defendant's objection, the prosecutor elaborated,

> "He just grabbed her hair. Nothing physical had happened except he grabbed her hair and she grabbed his beard and the stool. Then I didn't go after her. When she was leaving she was leaving. But oh, yeah. I did go after her in my truck."

The jury ultimately convicted defendant of harassment for spitting on K and acquitted defendant of all other charges.[2] Defendant now appeals from that conviction.

In defendant's first assignment of error, he contends that the trial court erred in overruling his objection to the prosecutor's closing argument wherein the prosecutor claimed that defendant said "nothing happened" when

---

[2] Defendant was charged with one count of strangulation, ORS 163.187(4), one count of assault in the fourth degree, ORS 163.160(2), and two counts of harassment, ORS 166.065(3).

interviewed by police. Assuming without deciding that the trial court erred in overruling defendant's objection, we conclude any error was harmless. To determine whether an error is harmless we must determine whether there is "little likelihood that the particular error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Defendant argues that the error was not harmless because (1) the error could not be cured because when the trial court overruled defendant's objection, it "accentuated the error,"[3] (2) the timing of the prosecutor's statements, which occurred during rebuttal, and gave the defendant no opportunity to respond,[4] and (3) defendant's credibility was a central issue in the case. We disagree for the following reasons.

We must first consider the nature of the alleged error. *Davis*, 336 Or at 32. In the portion of the state's closing argument at issue before us, the prosecutor was characterizing Brown's bodycam footage, commenting that defendant said "nothing happened" when interviewed by the police. That bodycam footage was submitted to the jury. The trial court instructed the jury according to Uniform Criminal Jury Instruction 1005, noting that "[t]he lawyers' statements and arguments are not evidence. If your recollection of the evidence is different from the lawyers' recollection, you must rely on your own memory." It is true that defendant never used the words "nothing happened" when speaking with the officer. However, the prosecutor's statements appeared to be a characterization of defendant's recorded statements in the officer's bodycam video in which defendant initially expressed confusion regarding any particular incident and then, after follow up, suggested that it was only K that had initiated physical conduct by throwing a bench and grabbing him by the beard. The jury was able to assess the prosecutor's characterization against the video that was in evidence. *See Cler v. Providence Health System-Oregon*, 349 Or 481, 487, 245 P3d 642 (2010) ("In general, in presenting closing arguments to the jury, counsel have a large degree of freedom to comment on the evidence submitted and urge

---

[3] *See State v. Newburn*, 178 Or 238, 241, 166 P2d 470 (1946).

[4] *See State v. Chitwood*, 370 Or 305, 318, 518 P3d 903 (2022).

the jury to draw * * * all legitimate inferences from that evidence.") (Internal quotations omitted.). Furthermore, the nature of the error in *State v. Newburn*, 178 Or 238, 166 P2d 470 (1946), which the defendant relies on for support, was far more serious. In *Newburn*, the prosecutor suggested to the jury that the state had evidence in its possession that was incriminating of the defendant but that was inadmissible under the rules of evidence. *Id.* at 240-41. Here, as noted, the state made a passing remark about admitted evidence, which the jury had the ability to credit or discredit.

We must also consider the context of the alleged error and its relation to the theories in the case. *Davis*, 336 Or at 33. Defendant compares this case to *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), arguing that the disputed error occurred during the prosecutor's rebuttal, affording the defense no opportunity to respond. Again, in *Chitwood*, the prosecutor's impermissible statement was much more serious; it "distorted the burden of proof by suggesting, incorrectly, what the jury must find in order to convict defendant." *Id.* at 316. Furthermore, in *Chitwood* the alleged error occurred at the *end* of the prosecutor's rebuttal and was "the last thing that the jury heard before beginning deliberations." *Id.* at 317. Here, contrary to defendant's assertions, the alleged error occurred during the prosecution's closing argument—which gave defendant the ability to respond—and was a passing comment characterizing evidence that the jury had already seen and heard. In addition, the spitting incident was not mentioned during the prosecutor's comments and despite defendant's insistence that the prosecutor's comments undermined defendant's credibility, the jury acquitted defendant of all charges except for the one count of harassment for the spitting incident. We conclude that the alleged error had little likelihood of affecting the jury's verdict.

Turning to defendant's second assignment of error, he contends that the trial court erred in denying his request for a "less satisfactory evidence" instruction. We review the refusal to give a statutory instruction for legal error. *Payne*, 366 Or at 606-07. Defendant embarks on a *Gaines* analysis of ORS 10.095(7), (8), contending, among other things, that

we construe the statute such that we "look[ ] backwards at historical steps that a party could have taken to produce superior evidence, but elected not to" to determine whether evidence was "within the power of the party." In this context, defendant wants us to consider that the state could have produced superior evidence by taking photos and DNA swabs of the white substance on K's overalls but elected not to do so. On that basis, defendant argues he was entitled to a "less satisfactory evidence" instruction.

But as defendant correctly notes, to accept his statutory construction we would, at a minimum, have to overturn precedential opinions construing the statute differently. We decline to do so. We have not construed ORS 10.095(7), (8) to require the instruction whenever an improved investigation may have resulted in better evidence. *See e.g.*, *State v. Sellers*, 76 Or App 552, 554-55, 709 P2d 768 (1985), *rev den*, 300 Or 478 (1986) (holding that the court's refusal to give the "less satisfactory evidence" instruction was not error "because the record does not indicate that the state had and failed to produce stronger evidence"); *see also State v. Woodfield*, 62 Or App 69, 74, 659 P2d 1006, *rev den*, 295 Or 259, (1983) (holding that the court's refusal to give the "less satisfactory evidence" instruction was not error because "[t]he only indication in the record [was] that the state did *not* have any evidence that was not offered") (emphasis in original); *see also State v. Brock*, 53 Or App 785, 791, 633 P2d 805, *aff'd*, 294 Or 15, 653 P2d 543 (1982) ("We decline to hold that just because the state possibly could have by a more diligent investigation obtained the record ***, the evidence is within the power of the state to produce."). We are not persuaded that those cases have been overruled by the Supreme Court or are plainly wrong and must be overruled by us. As a result, we also reject defendant's second assignment of error.

Affirmed.