**Raymond Jover HALL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–919.**

Court of Criminal Appeals of Oklahoma.

May 27, 1977.

**58**

John K. Bounds, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Raymond Jover Hall, hereinafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF-76-124, for the offense of Robbery With a Firearm, in violation of 21 O.S.Supp.1973, § 801. He was tried before a jury, which returned a verdict of guilty and sentenced the defendant to fifty (50) years' imprisonment. From that judgment and sentence the defendant has perfected his appeal to this Court.

The evidence adduced at trial was that on December 8, 1975, Sally Stewart and Gale Wood were working in the leasing office of an apartment complex in Tulsa, Oklahoma. Just before closing time two men came into the office and asked to make an application for an apartment. Ms. Stewart showed the men two available apartments, and then returned with them to the office to get information for a leasing form. As she was writing, one of the men produced a gun. The three of them then went into a back office where Ms. Wood was working, and one of the men locked the door. The man with the gun ordered Ms. Wood to open the desk drawers and take out the money; the other man ordered both women to remove their diamond rings, and also took Ms. Wood's watch. The women were then ordered to lock themselves in the bathroom for five minutes. When they came out the money was gone, and their purses had also been taken. In a subsequent photo spread the two women were unable to identify the man with the gun, but did identify the defendant as the second man.

The defendant's first and third assignments of error pertain to the in-court identification of the defendant by the victims. In his first assignment, the defendant contends that the trial court erred by not quashing the in-court identification, but we cannot agree with this assignment.

The trial court held an in camera hearing as required by *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Thompson v. State,* Okl.Cr., 438 P.2d 287 (1968), before admitting the in-court identification. At that hearing Detective Kenneth Brown of the Tulsa Police Department testified that one week after the robbery, he gave the victims a stack of approximately fifty pictures to examine, to see whether the women could identity anyone. The two women were separated and did view the picture together. Ms. Stewart picked out two pictures of the defendant, but could not make a positive identification, while Ms. Wood picked out a photograph of the defendant as one of the robbers.

At this point Detective Brown testified: "A. I just asked her if she was positive and she said yeah. And then I asked her if she noticed anything unusual about the man that came in an robbed her and she said no. And I asked her if she noticed anything unusual about the photograph and she said no. And I asked her if she noticed anything unusual about the guy in the photograph's eyes, and she looked at it for a little bit and she said, 'Well, he's got one eye that droops.' " (Tr. 31, 32).

Testifying before the jury, Officer Mark Field, the original investigating officer, stated that there was no mention of "drooping" eye in the original report, yet both women testified that they noticed the defendant's eye at the time of the robbery.

In addition to the photo spread, the two women later identified the defendant at a line-up at the police station. The original description of the robber included the fact that he was wearing dark pants with silver studs set in them. In *Thompson v. State,* supra, we set out guidelines for the conduct of line-ups. Those guidelines provide, inter alia, that a suspect should not be clothed in such a manner as to attract special attention. But when the defendant appeared in the line-up, he was wearing dark pants with silver studs set in them. The defendant's contention is that between the photo spread, where the eye defect was pointed out to the witnesses and the line-up where the defendant was dressed as the robber had been dressed, the in-court identification was hopelessly tainted, and should not have been admitted.

Certainly the conduct of the Tulsa police in this case is not to be condoned. The in person line-up should have been conducted with all the line-up participants clothed in studded pants, or none of them. However, we are impressed with the fact that the first identification was made by the women from fifty photographs which they viewed while separated and from which they independently identified the defendant. Furthermore, as discussed below, the witnesses in this case were positive in their identification from the very beginning. And after a review of the record and of the photographs of the line-up introduced into evidence, we do not find that the trial court was in error in allowing the in-court identification of the defendant.

■ For his third assignment of error, the defendant urges that the trial court erred in refusing to give the jury the defendant's requested instruction No. 1, pertaining to the reliability of eyewitness testimony. Although the State alleges that it has not been given an opportunity to view the requested instruction, we note that it is contained in the record on appeal. The instruction is based on the testimony of Dr. Bill Scott, a Psychology Professor at Oklahoma State University. Dr. Scott has conducted experiments in recognition ability in stress situations, and the gist of his testimony is that eyewitnesses are not reliable. The requested instruction, which was long and involved, was to the effect that eyewitness testimony should be received with great caution.

We have previously recognized that there are times when such an instruction might be necessary, cf. *Melot v. State,* Okl.Cr., 375 P.2d 343 (1962); however, in the instant case we do not feel that it was required. The question of witness identification has been discussed at length in *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820, cert. den., 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688

(1954). In that case the Supreme Court of Pennsylvania held that a cautionary instruction would not be necessary if certain conditions prevailed: (1) if there was a good opportunity for positive identification; (2) if the witness is positive in his identification; (3) if the identification is not weakened by prior failure to identify; and (4) if the witness remains positive as to the identification, even after cross-examination. On the other hand, the court said:

> ". . . where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." 106 A.2d 820, at 826, 827.

In the instant case the opportunity to make an identification was excellent. The victims and the robbers were in close quarters in good light for an extended period of time. Ms. Wood's identification of the defendant was firm and positive, from the very beginning. She testified that she made a point of studying the men's faces so that she would be able to recognize them later. At no time was she hesitant or doubtful. And although at the photo spread Ms. Stewart said only "this looks like the man," she was nevertheless able to pick out two pictures of the defendant taken at different times. Also, after an opportunity to view the man in the photograph in person at the police line-up, her identification, too, remained firm and positive. In this case there was no necessity for an instruction on the unreliability of eyewitness testimony.

The second assignment of error raised by the defendant concerns the conduct of the prosecuting attorney. He argues that comments by the prosecuting attorney during closing argument had the effect of prejudicing the jury so that the defendant did not receive a fair and impartial trial. However, after a review of the closing argument, we find no statements which could be termed improper. In closing argument, counsel for both the State and the defendant are allowed a wide latitude in commenting on the evidence and drawing inferences from it; and we do not find that the prosecuting attorney has exceeded the limits of propriety in this case.

■ Finally the defendant contends that the sentence imposed by the jury was an excessive one, due to passion and prejudice on the part of the jury. But in considering all the facts and circumstances of the case, we do not find the sentence to be excessive.

Therefore, finding modification uncalled for, and having found no error meriting reversal, we hold that the judgment and sentence in this case should be, and the same is hereby *AFFIRMED.*

BLISS and BRETT, JJ., concur.