575 P.2d 335

**The STATE of Arizona, Appellee,**

v.

**Frank James VALENCIA, Appellant.**

**No. 2 CA–CR 1111.**

Court of Appeals of Arizona,
Division 2.

Nov. 17, 1977.

Rehearing Denied Dec. 28, 1977.

Review Denied Jan. 24, 1978.

Bruce E. Babbitt, Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Donald S. Klein, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was convicted by a jury of four crimes: Count One, kidnapping with intent to commit rape or robbery; Count Two, rape while armed with a gun; Count Three, robbery while armed with a gun; and Count Four, theft of a motor vehicle. He was sentenced on Count Two to the Arizona State Prison for a term of not less than forty nor more than sixty years to run concurrently with a twenty to thirty-year sentence on Count One. He was sentenced to a ten to fifteen-year term on Count Three to run consecutively to the sentences on Counts One and Two. On Count Four, appellant was sentenced to time served in the Pima County Jail.

The record shows that at 8:45 p. m. on September 24, 1975, the victim arrived at her place of employment, a bar and eating establishment. She parked her vehicle in the parking lot and as she started to exit from the automobile was confronted by a person pointing a handgun at her. Her assailant got in the backseat of the car and directed her to drive west of the downtown area. En route, he crawled from the backseat to the front passenger seat. They traveled on a dirt road until it ended. Appellant had the victim stop the car, tied her hands behind her back and took her out of the car to an area where there were three mattresses on the ground. He then tore off her clothes and raped her at gunpoint. After raping her, appellant tore her clothes up, used them to gag and tie her and threw her into a clump of bushes which he ignited and then extinguished.

Appellant departed in the victim's car, leaving her tied up in the bushes. She succeeded in untying herself and tore two pieces of cloth off a mattress to cover her upper and lower body. She then walked until she came to a trailer occupied by the Lahun family who took her into the trailer and called the sheriff. A sheriff's deputy arrived shortly thereafter.

The victim was shown various photographs of suspects but did not identify any of them as her assailant until March 19, 1976 when she saw a picture in a Tucson newspaper of the appellant, who had been arrested for the murder of one Karen Tweedy. Her immediate reaction was that appellant was her attacker. She called the sheriff's office and four weeks later made a photo identification of appellant at the sheriff's office.

At trial, appellant never contested the fact that the rape occurred, but based his defense on alibi. He has raised six questions for review.

## INSTRUCTION ON EYEWITNESS IDENTIFICATION

█ The trial court refused to give appellant's lengthy instruction on eyewitness identification. This instruction was taken verbatim from the model instruction on identification contained in the appendix of the case of *United States v. Telfaire*, 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). We are unable to agree that the court erred in its refusal. The trial court instructed the jury on the factors it should take into consideration in passing upon the credibility of the witnesses, and also gave an instruction on the defense of alibi. Thus, the failure to

give the requested instruction was not error. *State v. Taylor*, 109 Ariz. 267, 508 P.2d 731 (1973).

Furthermore, great care should be exercised before giving an instruction approved by a federal court. A federal judge may comment on the evidence. 2 Federal Practice and Procedure § 488 (Wright, 1969). In Arizona state courts, however, such comment is constitutionally prohibited. Ariz.Const. art. 6, § 27; *State v. Barnett*, 111 Ariz. 391, 531 P.2d 148 (1975); *State v. Godsoe*, 107 Ariz. 367, 489 P.2d 4 (1971).

Our examination of the instruction discloses that part of it constituted a comment on the evidence and part was inapplicable to the facts of this case. The instruction also ran afoul of the rule that when a requested instruction is good in part and bad in part, the trial court is not required to separate the good from the bad, and may reject the whole instruction. *State v. Boozer*, 80 Ariz. 8, 291 P.2d 786 (1955).

## EXPERT OPINION EVIDENCE ON THE RELIABILITY OF EYEWITNESS IDENTIFICATION

Appellant contends the trial court erred in refusing to allow him to present the testimony of Dr. Kevin Gilmartin. His testimony would have dealt with the psychological problems which reduce the reliability of eyewitness identification. We do not agree that this was error. Whether a witness is competent to testify as an expert is within the trial court's discretion and this rule applies also to a determination of the areas in which expert testimony is appropriate. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (App.1977). It is not error to disallow expert testimony on the limitations and weakness of eyewitness identification. *United States v. Brown*, 540 F.2d 1048 (10th Cir. 1976).

## ADMISSION OF HEARSAY TESTIMONY

The trial court allowed Brady Lahun and his wife to tell the jury what the victim told them concerning the rape. Appellant claims this was error. We do not agree. She arrived at their trailer clothed only in scraps of mattress cover. She was nervous, crying and shaking. Her statements to the Lahuns were admissible as spontaneous utterances. *State v. Perry*, 116 Ariz. 40, 567 P.2d 786 (App.1977). Appellant also contends it was error to allow the deputy sheriff who went to the Lahun residence to testify as to what the victim told him about the rape. Since no objection was made to this testimony at trial, any right to raise the issue on appeal was waived. *State v. Perry*, supra.

## PROSECUTORIAL MISCONDUCT

Appellant contends there were four instances of prosecutorial misconduct during the trial. During the direct examination of Gloria Lahun the prosecuting attorney asked her why she had aided the victim. The witness replied: "Because we have a daughter and I wouldn't want—" The answer was cut off by a sustained objection.

The second instance occurred when the prosecuting attorney was making her final argument. She said: "If this were you or your daughter, or your wife or your sister—" At that point, the trial judge sua sponte interrupted, reprimanded her and instructed the jury to disregard the remark. In neither instance did appellant make a motion for a mistrial. No predicate for appellate review exists when there has been a failure to move for a mistrial. *State v. Ballesteros*, 100 Ariz. 262, 413 P.2d 739 (1966).

Appellant next complains that the prosecuting attorney was guilty of misconduct in her cross-examination of appellant's uncle. Appellant, however, did not object and therefore has waived any error. *State v. Perry*, supra.

Lastly, it is appellant's contention that the trial court erred in permitting the prosecuting attorney to elicit from appellant during cross-examination the fact that he spoke to a police officer on March 2, 1976. He claims this suggested to the jury that appellant was implicated in some crim-

inal conduct other than the present case and the Karen Tweedy murder. We do not agree. The mere fact that a person has spoken to a police officer does not necessarily suggest criminal involvement. Here, the jury could well have believed the incident referred to the Tweedy murder case. The jury already knew that appellant was involved in that murder because his attorney brought this out in his voir dire of the jury and in his opening statement.[1]

## RESTRICTION OF JURY VOIR DIRE

Appellant claims the trial court erred in failing to fully investigate whether the prospective jurors were prejudiced against appellant because of his race. In addition, he claims the court failed to fully investigate whether the pretrial publicity surrounding the Tweedy murder case would affect the jurors' ability to fairly review the evidence in the instant case. We do not agree. The trial judge questioned the veniremen in groups of four about whether their impartiality would be affected by appellant's involvement in the Tweedy case. He specifically asked them whether they had heard about the Tweedy case from news accounts or other sources, and whether they had reached any conclusions as to appellant's guilt or innocence.

The trial judge also informed the veniremen that appellant's mother was half Papago and half Mexican and that appellant was part Negro. He then asked them whether they felt that the matter of appellant's racial background would cause them to be influenced or prejudiced.

## IMPEACHMENT ON A COLLATERAL ISSUE

Appellant's mother testified that he was watching television at her home on the evening of September 24, 1975. She also admitted on cross-examination that she had stated at an earlier hearing that appellant had also been home watching television during the late evening and early morning of March 1st and March 2nd, 1976.

Without objection on the part of appellant, the prosecuting attorney asked him if his mother was correct in her testimony as to his whereabouts on March 1st and 2nd, 1976. He said that she was not correct. Appellant now claims it was error to allow the prosecuting attorney to question him as to the truth of his mother's testimony since it constituted impeachment on a collateral matter. See, *State v. Johnson*, 27 Ariz.App. 96, 551 P.2d 86 (1976). Assuming arguendo he is correct, appellant is precluded from complaining on appeal since he failed to object. *State v. Perry*, supra.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.

1. Appellant's counsel felt it was necessary to bring up the Tweedy murder case in order to attack the victim's method of identification of appellant. In other words, that the identification was the product of suggestion as a result of the newspaper article.