State v. Kinard

STATE OF NORTH CAROLINA v. STEVE KINARD

No. 8126SC390

(Filed 3 November 1981)

1. Criminal Law § 66.20— identification testimony—findings of court—supported by evidence

In a breaking or entering and larceny case, the findings of fact were supported by the evidence and supported the trial court's conclusion that identification testimony was properly admissible where the evidence showed two witnesses observed defendant at the victim's apartment from a short distance for two or three minutes, that they left and one of the witnesses returned, saw defendant removing the stereo from the victim's apartment, and upon firing shots, saw defendant drop the stereo, and where both witnesses, separately, chose defendant's photograph from among six photographs.

2. Criminal Law § 111.1— photographic identification—instructions proper

Where defendant requested the trial judge read a paragraph of the N.C. P.I. which applied only to a lineup or show-up identification situation and was inapplicable to the photographic identification in the case, the trial court did not err in failing to give it. Further, the trial judge did not have an affirmative duty, absent a request, to specifically instruct the jury to consider the possibility of misidentification where there was little if any evidence to suggest unfairness or likelihood of misidentification in the photographic identification.

APPEAL by defendant from *Davis, Judge.* Judgment entered 3 October 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 October 1981.

Defendant was convicted, as charged, of (1) breaking or entering the residence of Virginia Potts on 19 May 1980, and (2) larceny of a stereo component set from the residence.

Defendant appeals from judgments imposing prison terms of six to ten years and four to five years, the sentences to run consecutively. The court found that defendant would not benefit from a committed youthful offender sentence.

*Attorney General Edmisten by Assistant Attorney General Sarah C. Young for the State.*

*Appellate Defender Adam Stein for defendant appellant.*

CLARK, Judge.

[1]   The defendant first challenges the admissibility of the iden-
tification evidence. At voir dire upon defendant's motion to sup-
press identification testimony, Katie Glenn and her boyfriend,
Willie Simpson, testified that about 8:30 a.m. they were in the
duplex apartment adjoining that of Virginia Potts when they saw
a young black man pulling on the door of the Potts apartment.
They observed him for two or three minutes from a distance of
several feet. When Simpson went out the back door, the man left,
and, while walking away, looked back at them about five times.

Simpson took Ms. Glenn to work and returned about 40
minutes later. He saw the same man come out of the Potts apart-
ment carrying a stereo set. He told the man to bring it back, but
the man would not do so. Simpson got his rifle and fired two
shots over the man's head. The man dropped the stereo set and
ran.

The following day Simpson and Ms. Glenn went to the Law
Enforcement Center where they were shown, separately, six
photographs. Both selected the photograph of the defendant, Ex-
hibit 6, as the man they saw at the Potts apartment.

The trial judge made findings of fact and concluded that the
identification of the defendant by Ms. Glenn and Simpson was of
independent origin, untainted by any pretrial identification pro-
cedure which was unnecessarily suggestive and conducive to ir-
reparable mistaken identification.

The findings of fact by the trial judge were supported by
clear and convincing evidence, and the findings of fact in turn
supported the conclusion that the in-court identification was of in-
dependent origin based on their observation of the defendant at
the scene of the crime. *See State v. Wilson*, 296 N.C. 298, 250 S.E.
2d 621 (1979). We hold that the identification testimony was ad-
missible.

[2]   The defendant assigns as error the failure of the trial court
to give the requested portions of N.C.P.I.—Crim. 104.90 relating
to identifications made after the crime. The trial court gave the
following instructions from N.C.P.I.—Crim. 104.90:

"I instruct you that the State has the burden of proving
the identity of the defendant as the perpetrator of the crime

charged beyond a reasonable doubt. This means that you, the Jury, must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crime charged before you may return a verdict of guilty. Now, the main aspects of identification are the observations of the offender by the witnesses before or at the time of the offense. Now, in examining the testimony of the witnesses, as to their observation of the perpetrator before, or at the time of the crime, you should consider such things as the lighting on the front porch of Virginia Potts, the lighting on the back porch, whether it was daylight or dark. You should also consider those things such as the close proximity of the witness, whether or not there was any face to face contact, whether they were able to observe the entire body of the defendant or only a portion of the body, the length of time the defendant may have been in the presence of the witness and the length of time they may have observed his features and his face. Now, the identification witnesses are witnesses just like any other witness. That is, you should assess the credibility of the identification witnesses in the same way that you would any other witness, in determining the adequacy of his observation and his capacity to observe.

As I have instructed you earlier, the State must prove beyond a reasonable doubt that the defendant was the perpetrator of the crime charged. If after weighing all the testimony, you are not satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crime charged, it would be your duty to return a verdict of Not Guilty."

However, the court failed to give, as requested by defendant, the following paragraph from N.C.P.I. — Crim. 104.90:

"(In examining the testimony of the witness as to his observation after the crime you should consider (describe relevant factors).[2] However, your consideration must go further. The identification of the defendant by the witness as the perpetrator of the offense must be purely the product of the witness' recollection of the offender and derived only from the observation made at the time of the offense. In making this determination you should consider the manner in which the witness was confronted with the defendant after

the offense, the conduct and comment of the person in charge of the (describe confrontation, e.g., line-up, show-up, etc.) and any circumstances or pressures which may have influenced the witness in making an identification, and which could cast doubt upon or reinforce the accuracy of the witness' identification of the defendant.)[3]"

We note that footnote 3 to the instruction states that the last quoted paragraph should be used only where the defendant has been identified by the witness at a time after the offense was committed, and while the defendant was in custody or control of law enforcement officers. It is clear from footnote 3 and from the questioned instruction, which refers to "the manner in which the witness was confronted with the defendant," that it applied only to a lineup or show-up situation and not to photographic identification. "Confrontation" is the act of setting a witness face-to-face with the prisoner. *State v. Behrman*, 114 N.C. 797, 19 S.E. 220 (1894); Black's Law Dictionary (4th Ed.). The questioned paragraph was inapplicable to the photographic identification in the case *sub judice*, and the trial court did not err in failing to give it.

The defendant did not request instructions specifically applicable to the photographic identification procedure used in this case. The question then is whether the failure of the court to give such instructions, in the absence of a proper request, was prejudicial error. We think not. Whether the identification issue is such a substantial feature of the case that the trial court is required to give instructions specifically dealing with the relevant factors involved in either a confrontation identification or photographic identification depends on the evidence in each case. If the evidence strongly suggests the likelihood of irreparable misidentification, the identification issue would become a substantial feature of the case, and the trial judge is required, even in the absence of a request, to properly instruct the jury as to the detailed factors that enter into the totality of the circumstances relating to identification.

In the case before us there is little if any evidence to suggest unfairness or likelihood of misidentification in the photographic identification. Though the two witnesses were in the same room when the photographs were given to them for examination, both

testified that they were apart and could not see the photographs while the other made the examination. Both testified that they immediately selected the photograph of the defendant without looking at the back of the photograph where defendant's name appeared. The defendant's confrontation of the two witnesses by cross-examination elicited nothing to support defendant's contention. In light of this evidence we find that the general identification instructions were sufficient to significantly focus the attention of the jury on the issue of identity, that the trial judge did not err in failing to give the N.C.P.I.—Crim. 104.90 instructions relating to confrontation identification, and that the trial judge did not have the affirmative duty, absent a request, to specifically instruct the jury to consider the possibility of misidentification under the circumstances revealed by the evidence of the photographic identification.

We have carefully considered the defendant's other assignments of error and arguments, and we find the alleged errors to be merely technical and not prejudicial. *See* G.S. 15A-1443(a).

No error.

Judges HEDRICK and MARTIN (Harry C.) concur.