**Rodney Henry McDOULETT, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–83–45.**

Court of Criminal Appeals of Oklahoma.

July 31, 1984.

---

E. Terrill Corley, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Rodney Henry McDoulett, was charged in separate counts, with Burglary in the First Degree (Count I), Robbery with a Firearm (Count II), and Rape in the First Degree (Count III) in Case No. CRF–81–4575 in the District Court of Tulsa County. The first trial resulted in a hung jury. At the second trial, the jury returned a verdict of not guilty for Counts I & II, and a verdict of guilty for Count III, assessing punishment at ten (10) years' imprisonment. The trial court sentenced the appellant accordingly and he appeals.

In the early morning hours of October 27, 1981, C.F. awoke to discover a man holding a gun to her head. As the overhead light was on, the man covered her eyes with his free hand and told her not to look at him. The assailant then took C.F. over to the bedroom dresser, where her jewelry box had been opened, and asked where she kept the rest of her jewelry. At this point, C.F. instinctively looked into the dresser mirror and saw the assailant's face. At trial she testified to seeing his reflection for five to ten seconds, but on a previous occasion testified that she looked at him for three or four seconds.

The assailant led C.F. around the house in search of valuable items, always remaining behind her with a gun to her head. He then raped her as she lay face down on the floor. When the assailant left her house, C.F. noticed he was wearing a flannel shirt, blue jeans and white jogging shoes, although she could not see his face.

Following the offense, C.F. described her assailant as a white male of medium build with brown curly hair and a scarred, pockmarked face. She, along with the assistance of the police officer, estimated the assailant's height and weight to be five feet ten inches tall and one hundred and sixty pounds.

Within a few days of the rape, C.F. underwent hypnosis with the aid of a police officer and gave a description substantially similar to the earlier one. A composite sketch was made, which was released to the public through the Crime Stoppers Program. As a result of that release, the appellant was arrested.

The appellant presented testimony from several witnesses that he was at another address at the time of the offense and that he did not own any clothes similar to the ones described as worn by the assailant, except for blue jeans. He testified that he is five feet eight inches tall and weighed one hundred and twenty-seven pounds at the time of trial.

The appellant has presented three alleged errors at trial which he claims require reversal of his conviction. This Court finds his first alleged error meritorious and reverses the conviction for first degree rape.

The appellant contends that the trial court erred when it refused to give his requested cautionary instruction regarding eyewitness identification. We have recognized in the past that there are times when such an instruction might be necessary and proper. *See Pisano v. State*, 636 P.2d 358 (Okl.Cr.1981); *Hall v. State*, 565 P.2d 57 (Okl.Cr.1977); *Melot v. State*, 375 P.2d 343 (Okl.Cr.1962). Extensive research has revealed that of the states which have dealt with this issue, the majority have also recognized that the potential for injustice in this area necessitates that an instruction be given under certain circumstances. *See Brooks v. State*, 380 So.2d 1012 (Ala.Cr. App.1980); *Williams v. State*, 652 P.2d 478 (Alaska Ct.App.1982); *State v. Valencia*, 118 Ariz. 136, 575 P.2d 335 (App.1977); *People v. Hall*, 28 Cal.3d 143, 616 P.2d 826, 167 Cal.Rptr. 844 (1980); *State v. Harden*, 175 Conn. 315, 398 A.2d 1169 (1978); *State v. Pahio*, 58 Hawaii 323, 568 P.2d 1200 (1977); *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981); *Commonwealth v. Rodriguez*, 378 Mass. 296, 391 N.E.2d 889 (1979); *People v. Dyson*, 106 Mich.App. 90, 307 N.W.2d 739 (1981); *State v. Helterbridle*, 301 N.W.2d 545 (Minn.1980); *State v. Murphy*, 415 S.W.2d 758 (Mo.1967); *State v. Hart*, 625 P.2d 21 (Mont.), cert. denied. 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981); *State v. Green*, 86 N.J. 281, 430 A.2d 914 (1981); *State v. Mazurek*, 88 N.M. 56, 537 P.2d 51 (1975); *People v. Gardner*, 59 A.D.2d 913, 399 N.Y.S.2d 146 (1977); *State v. Kinard*, 54 N.C.App. 443, 283 S.E.2d 540 (1981); *State v. Rovles*, 41 Or. App. 653, 598 P.2d 1249 (1979); *Commonwealth v. Mouzon*, 456 Pa. 230, 318 A.2d 703 (1974); *State v. Stinson*, 88 S.D. 592, 226 N.W.2d 155 (1975); *State v. Kasper*, 137 Vt. 184, 404 A.2d 85 (1979); *State v. Payne*, 280 S.E.2d 72 (W.Va.1981).

■ Thus, in cases in which the eyewitness identification is a critical element of the prosecution's case and serious questions exist concerning the reliability of that identification, a cautionary instruction should be given which advises the jury regarding the factors to be considered. In the past, we have cited with approval the Pennsylvania Supreme Court's ruling in *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), wherein that court stated the following:

> Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of a fact.' For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi.
>
> On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Id.* at 424, 106 A.2d at 826 (citations omitted).

We applied the *Kloiber* test to the facts in *Pisano*, 636 P.2d 358, and in *Hall*, 565 P.2d 57, and found that a cautionary instruction was unnecessary. Applying the test to the case at bar, however, we conclude that a cautionary instruction was necessary as C.F.'s opportunity to observe the assailant did not meet the enunciated standard. An example of an instruction which adequately covers this issue is set forth in the Oklahoma Uniform Jury Instructions.[1]

---

**1.** TESTIMONY TENDING TO PROVE IDENTITY IS TO BE SCRUTINIZED WITH EXTREME CARE. THE POSSIBILITY OF HUMAN ERROR OR MISTAKE AND THE PROBABLE LIKENESS OR SIMILARITY OF OBJECTS AND PERSONS ARE CIRCUMSTANCES THAT YOU MUST CONSIDER IN WEIGHING TESTIMONY AS TO IDENTITY. YOU

C.F. testified at different times that she only viewed the assailant's face from three to ten seconds when she glanced up into a mirror and saw his reflection as he stood behind her. The only evidence connecting the appellant to this offense aside from her eyewitness testimony is appellant's blood type. According to the forensic chemist who testified at trial, the appellant, the assailant, and forty-five percent of the American population have type O blood.

■ We find that the circumstances set forth in *Kloiber* and in OUJI–CR 820 should not be viewed as exclusive. Another factor that should be considered in determining the need for a cautionary instruction is the accuracy of the witness' prior description of the assailant.[2] In the present case, C.F. described her assailant as a medium to dark complected man with complexion scars and brown curly hair. She estimated him to be 5′9″ to 5′10″ tall and weighing between 150 and 160 pounds. Appellant does have brown curly hair and complexion scars, but he is 5′8″ tall and usually weighs between 127 and 130 pounds. At the time of trial, he weighed 127 pounds, and estimated his weight at the time of the assault to be 130 pounds. C.F. also observed the assailant's hands while the offense was being committed and at trial described his hands as "clean". Evidence presented by the defense established that the appellant worked as an automechanic and had scarred hands from a previous accident.

■ Although C.F. was positive in her identification of the appellant as her assailant, remained positive, and never failed to identify him when afforded the opportunity, the circumstances surrounding this offense make it an appropriate case for issuing the cautionary instruction. Where there is evidence that the witness was not in a position to clearly observe the assailant and that her prior description was inaccurate, a defendant is entitled to have the jury instructed that the testimony as to identity must be received with caution. The trial court's failure to so instruct the jury in the present case constituted reversible error.

■ In another assignment of error the appellant claims that the victim's in-court identification of him as the assailant was tainted because she had undergone hypnosis after the rape to aid in her identification of the assailant. The record does not reveal that the appellant objected to C.F.'s testimony or identification of him. Through a motion in limine that was overruled, the appellant sought to have all evidence that C.F. had undergone hypnosis excluded from trial. His attempt to have the issue of hypnosis excluded cannot serve as a proper objection for the issue now before the Court, and thus, we decline to review it on appeal. *See Gaines v. State*, 568 P.2d 1290 (Okl.Cr.1977). Because the fact that C.F. was hypnotized is likely to be an issue in any future trial involving this offense, however, we would direct the attention of the parties involved to the recent decision rendered by this Court in *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984).

The third alleged error, occurring at trial and raised by the appellant is meritless.

SHOULD CAREFULLY CONSIDER THE FACTORS THAT BEAR UPON THE CREDIBILITY THAT YOU ATTACH TO THE WITNESS'S TESTIMONY, SUCH AS: (1) WHETHER THE WITNESS HAD AN OPPORTUNITY TO OBSERVE THE SUBJECT CLEARLY; (2) WHETHER THE WITNESS IS POSITIVE IN THE IDENTIFICATION; (3) WHETHER THE WITNESS'S IDENTIFICATION IS WEAKENED BY A PRIOR FAILURE TO IDENTIFY THE SUBJECT; AND, (4) WHETHER THE WITNESS'S TESTIMONY REMAINED POSITIVE AND UNQUALIFIED AFTER CROSS–EXAMINATION.

YOU MUST BE SATISFIED BEYOND A REASONABLE DOUBT AS TO THE ACCURACY OF THE WITNESS'S IDENTIFICATION OF THE [PERSON] [THING].
OUJI–CR 820

2. This factor was used by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) to determine the reliability of identification testimony for confrontations.

Because it is unique to that trial, we find it unnecessary to discuss it in this appeal.

The judgment and sentence of the trial court is REVERSED and the case is REMANDED for a new trial.

PARKS, J., concurs.

BUSSEY, P.J., dissents.

BUSSEY, Presiding Judge, dissenting:

I must respectfully dissent. I do not believe that a cautionary eyewitness identification should be given under any circumstances. If the identification is admissible, the weight and credibility to be given the testimony of the testifying witness is for the jury's determination, and the giving of such an instruction tends to invade the province of the jury.