**David Johns BRYSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–514.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1985.

Rehearing Denied Jan. 27, 1986.

Jim Pearson, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

**PARKS, Presiding Judge:**

The appellant, David Johns Bryson, was convicted of Kidnapping, Rape in the First Degree, two counts of Oral Sodomy, and Anal Sodomy in the District Court of Oklahoma County, Case No. CRF–82–5031. The jury set punishment at ten (10), seventy-five (75), ten (10), ten (10), and ten (10) years imprisonment. The trial court ordered each of the ten year sentences to run concurrently, but be served consecutively with the seventy-five year sentence. We affirm.

At around 5 p.m. on September 23, 1982, T.T., an executive legal secretary employed by a downtown Oklahoma City law firm, walked to her car, which was parked near her office. As T.T. attempted to get into the car, she was accosted by appellant, who ordered her to move into the passenger side of the vehicle. T.T., believing appellant had a gun, complied with this demand. As appellant drove away with T.T. in the car, he forced T.T.'s head onto his lap. He struck the prosecutrix several times on her head and back, and forced her to commit an act of fellatio as he drove the car.

After driving some distance in this manner, appellant stopped the car at a ravine in southeast Oklahoma City. Appellant then ripped off T.T.'s blouse and bra, and blindfolded her with a strip of cloth from the blouse. T.T. then noticed that appellant had a knife. Appellant forced T.T. to smoke from a pipe of marijuana.

After exiting the vehicle, appellant pushed T.T. into the ravine, climbed down after her, and both raped and anally sodomized her. T.T. suffered injury to her anus from the appellant's acts. Appellant then ordered T.T. to commit another act of fellatio. Because she believed appellant was about to kill her, T.T. bit appellant's penis as hard as she could. Appellant screamed, cried, and finally dropped the knife. Through clinched teeth, the prosecutrix ordered appellant onto his side, bit the appellant again, and ran away.

Naked and crying, T.T. stumbled to the home of Air Force Major Thomas Kuritz, who called police. Meanwhile, appellant was observed by Marge White, who was driving on nearby Sooner Road. Ms. White

testified appellant was hitchhiking, and, as her car approached, lunged out at the vehicle.

A subsequent police investigation revealed appellant had an injury to his penis. Seriological and hair analysis evidence also linked appellant to the crime.

## I.

■ Appellant first presents a question of first impression regarding the scope of the Physician-Patient Privilege, as now codified at 12 O.S.1981, § 2503. The question presented is whether a breach of the medical privilege occurs when a communication between a criminal defendant and his doctor is revealed by the doctor to police, and evidence against the defendant is thus obtained, although the doctor does not testify at trial. We answer in the negative.

In this case, a police detective organized Rape Crisis Center volunteers to telephone metro area hospitals and physicians in an attempt to learn if any men had received treatment for an injured penis. A Dr. Tillinghast reported some two weeks later that appellant called him to receive treatment for an injury to his penis, which appellant said occurred during oral sex with his girlfriend. Police obtained a description of appellant, and arrested him. After his arrest, appellant's photograph was placed in a photographic line-up. Police also obtained body sample comparisons and a photograph of appellant's injured penis.

■ Appellant argues that the State improperly obtained its initial information from Dr. Tillinghast, in violation of Section 2503. He claims this impropriety tainted the evidence subsequently gathered by police and, therefore, was inadmissible. We do not agree. Certainly, if Dr. Tillinghast had been called as a witness and testified regarding appellant's communication to him, the privilege would have been violated. However, Dr. Tillinghast never testified, and we are not inclined to extend the statute in the manner urged by appellant.

■ We note that Section 2503 recites a statutory *testimonial* privilege. It is not a privilege enacted to protect an accused from police investigation, and certainly was not designed to preclude police from obtaining voluntary information from physicians. The State has an interest in the protection of its citizens from violent acts, and to insure the swift apprehension of criminals who commit such acts. Applying this statute in the broad manner urged by appellant would serve as a cloak for crime. This assignment of error is accordingly without merit.

## II.

Appellant also complains the in-court identifications by both the prosecutrix and Marge White were tainted by pre-trial irregularities relating to the photographic line-up, thereby denying him due process of law. We cannot agree.

The U.S. Supreme Court has held that "convictions based on eyewitness identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood or irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). However, even a suggestive pre-trial confrontation "will not invalidate a courtroom identification that can be established as independently reliable." *Green v. State*, 594 P.2d 767, 789 (Okl.Cr.1979). *Accord Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In determining the independent reliability of the identification, we consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Gregg v. State*, 662 P.2d 1385, 1388 (Okl.Cr. 1983).

## A.

■ Turning first to the pre-trial confrontation by the prosecutrix, we cannot agree with appellant's claim that comments

made by the police after the identification rendered the procedure unnecessarily suggestive.

In this case, the record reflects that, some two weeks after the crime, appellant was arrested, and police prepared a photographic line-up for T.T. and Ms. White. The line-up was presented to the prosecutrix, who selected appellant's photograph. After this selection, a police detective informed the prosecutrix that the man in the photograph was in custody and had an injury to his penis.

■ Certainly, if T.T. had been hesitant or tentative in her pre-trial identification, the police comments would have rendered the confrontation unnecessarily suggestive. *See Field v. United States,* 625 F.2d 862 (9th Cir.1980). However, the prosecutrix was positive in her identification. Furthermore, although T.T. was blindfolded during part of the ordeal, she saw appellant as he entered her car, and was able to observe him several times when the blindfold became loose. In fact, T.T. had an unobstructed face-to-face view of the appellant as he raped her. There is no indication in the record that the prosecutrix was ever anything but positive in her identification of appellant. Soon after the crime, she gave a detailed description of her assailant, which matched the appellant's physical characteristics. Even if the police comments had tainted the confrontation—and we hold that they did not—the identification was independently reliable. *Accord People v. Johnson,* 653 P.2d 737 (Colo. 1982).

### B.

Appellant makes a similar claim regarding the pre-trial identification of appellant by Ms. White. However, the record reflects no indication of police impropriety connected with this pre-trial confrontation.

This assignment of error is without merit.

1. Although Ms. White could not positively identify the defendant from the photographic array,

### III.

■ In a related assignment of error, the appellant asserts the trial court erred in refusing his requested cautionary instruction on eyewitness identification. We disagree.

This Court reiterated in *McDoulett v. State,* 685 P.2d 978 (Okl.Cr.1984), that an instruction on eyewitness identification is properly refused "[w]here the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by a prior failure to identify but remains, even after cross-examination, positive and unqualified." *Id.* at 980, quoting *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954). According to the record, both the prosecutrix and Ms. White were positive in their respective identifications of the appellant, and remained so after probing cross-examination by defense counsel. There is no indication in the record that either witness failed to identify this appellant, in face-to-face confrontations,[1] as the person each saw on the day in question. As noted above, the prosecutrix's opportunity to observe appellant was good. Further, when appellant lunged at Ms. White's car, she had a clear view of his face. She also observed him before and immediately after this incident. Her description of the man she observed matched appellant's physical characteristics.

We accordingly reject this assignment of error.

### IV

■ Next, appellant complains the trial court erred in allowing the State to introduce evidence that appellant used marijuana during the crime. We have repeatedly held that evidence of another crime will not be excluded where it incidentally emerges as the events are revealed in their natural sequence. *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980).

she did identify him without hesitation at both preliminary hearing and trial.

V.

■ Appellant also argues the trial court erred in allowing the prosecutor to engage in prosecutorial misconduct during closing arguments. The record reflects the prosecutor stated that "from this evidence ... you could conclude that he may have stalked [the prosecutrix]; that he may have seen her before." We have held that prosecutors are entitled, during summation, to draw reasonable inferences from the record. *Hair v. State*, 532 P.2d 72 (Okl.Cr. 1974). We believe the prosecutor indicated with sufficient clarity that this statement was based on his interpretation of the evidence presented at trial. We cannot say the trial court erred in permitting this argument.

VI.

■ Finally, appellant argues the accumulation of error at trial should result in reversal of this conviction. However, we have stated that "if previous errors are without merit then the propositions considered collectively would also be without merit." *Black v. State*, 664 P.2d 1054, 1058 (Okl.Cr.1983). Appellant has failed to show that any of the alleged irregularities were, in fact, error. This assignment of error is without merit.

Accordingly, the judgment and sentences of the District Court are AFFIRMED.

BRETT, J., concurs.

BUSSEY, J., specially concurs.

BUSSEY, Judge, specially concurring:

I agree that the judgment and sentence should be affirmed since the evidence of the appellant's guilt is overwhelming and the record is free of any error which would require modification or reversal.