Willie R. JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–74.

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1986.

E. Alvin Schay, Appellate Public Defender, Robert M. Beck, Sp. Counsel, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

On appeal from his conviction in the District Court of Stephens County, Case No. CRF–83–132 on the charge of Grand Larceny After Former Conviction of Two or More Felonies, in which he received a sentence of fifty years' imprisonment, the appellant raises three assignments of error.

The facts show that on May 17, 1983, at about 4:35 p.m., the appellant walked into the Zales jewelry store in Duncan, Oklahoma, and asked to see some men's diamond rings. Assistant manager Louise Turner showed him several rings, but after talking to him for several minutes she became suspicious and carefully observed him in order to be able to give a description should such become necessary. Placing two of the rings, which had a total value of over two thousand five hundred dollars, on his fingers, he looked up at Mrs. Turner, thanked her, and ran out the door. She immediately notified the police and gave them a detailed description of his clothing, physical appearance, and even the brand

and style of watch he was wearing.[1] She positively identified him in court.

Detective Charles Whitis of the Lawton Police Department received a description of the suspect from Detective Sargeant Rex Ross of the Duncan Police Department, and in response told Ross that the description matched the appellant. About one o'clock the morning of May 18, Whitis was on duty in the area of North First Street when he observed the appellant standing outside a car located in a store parking lot and dressed in a similar manner to the description he was given by Ross. When he approached he noticed that the appellant was pouring a liquid substance which had a strong odor of P.C.P. onto the car seat and as a result, he was arrested.[2]

During the trial, the appellant's sister and a friend of his testified in his behalf that on the day of the crime, he was working on his sister's fence. In rebuttal, testimony from Detective Ross, and a fingerprint expert with the Oklahoma State Bureau of Investigation established that on that day, Ross lifted fingerprints from the jewelry store display cases, which were cleaned daily, and one of the prints was positively identified by the expert as coming from the appellant.

## I.

For his first assignment of error, the appellant alleges that the trial court

erred by denying the appellant's motion for a directed verdict on the grounds that the evidence failed to establish that the value of the stolen property was over the statutory amount of fifty dollars. He argues that the testimony showed the value of the rings at the time they were purchased by the store, but not at the time they were taken. The record shows that the assistant manager, Louise Turner, testified that the value of one ring was sixteen hundred and fifty dollars ($1,650.00) and that the value of the other was eight hundred and ninety-nine dollars ($899.00), and that State's exhibits one and two, which are store invoices, also show the retail price of each ring to be over the statutory amount of fifty dollars. We have held that a store manager's testimony as to value is sufficient to establish, in conformance with the statutory requirement, that the value of the merchandise was in excess of the amount separating grand larceny from petit larceny. *Griffin v. State*, 530 P.2d 1366 (Okl.Cr. 1975). We find that the evidence presented was sufficient to deny the appellant's motion.

As part of this assignment of error, the appellant also complains that jury instructions six and nine advised the jury that it could convict the appellant of grand larceny if it believed the value of the property taken exceeded twenty dollars ($20.00), rather than fifty dollars ($50.00) as required by 21 O.S.Supp.1982, § 1704.

1. Mrs. Turner's statement reads as follows:

He was a black male, about twenty to twenty-five years old, five nine to five ten, weighed a hundred sixty to a hundred and sixty-five pounds, he had on a greenish brown or brownish color corduroy cap, he had on a red Ocean Pacific long sleeved T-shirt or shirt, with the words Ocean Pacific spelled out on each arm in blue or black lettering. He had O.P. on the left front of the shirt—the initials O.P. on the back of the shirt it had a—an ocean type scene, which of course, goes with all the Ocean Pacific shirts and the State of Texas on the back. And there was green, yellow, blue colors mingled in. Okay, he had on a pair of blue jeans—I think they might have been Levi's but I can't say for sure. And a pair of white tennis shoes with red stripes, which again having teenagers of my own, I think they were Nike's, but I—you know, I

couldn't have been sure then. And—okay. He was—his coloring was dark and he had kind of short hair, his eyes were kind of bugged out. While I was waiting on him showing him the rings—of course, you notice people's hands when you're waiting on them like that. His—the thumbnail on his left hand was about an eighth of an inch long and it had either a tear or kind of a—a nick in it and he had—of course, his watch was a white Timex quartz with a brown or black leather strap and it was kind of unusual, because it had the day and the date instead of at the three, it was at the six. (Tr. 22–23).

2. His corduroy cap, red "Ocean Pacific" shirt and Timex watch were confiscated as evidence. After executing a consent to search, a pair of white Nike tennis shoes, trimmed in red, were found in the appellant's bedroom.

This Court has stated many times that even though error occurs during a trial, this alone is not sufficient to require reversal. The error must injure the defendant and the burden is on him to establish that he was prejudiced in his substantial rights by the error. *Smith v. State,* 656 P.2d 277, 283, 284 (Okl.Cr.1982). Because the amount involved is well over fifty dollars, the appellant has not shown sufficient prejudice resulted and therefore we find the error was harmless.

This first assignment of error is without merit.

## II.

As his second assignment of error, appellant raises seven subpropositions, each alleging ineffective assistance of counsel. Before addressing these subpropositions separately, we note that in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States addressed this issue stating:

[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' (Citation omitted).

\* \* \* \* \* \*

[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

\* \* \* \* \* \*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defend-

ant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

\* \* \* \* \* \*

If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

█ As his first subproposition, the appellant alleges that defense counsel erred in failing to file a motion to disclose the technical reports. Appellant alleges that as a result of that failure, he was unfairly surprised by the rebuttal testimony of Detective Ross and the OSBI agent concerning the fingerprint evidence and that this prejudiced him because the testimony contradicted his alibi that he had been in Lawton at the time of the crime. The record reveals that prior to the rebuttal, a hearing was held in camera to determine the admissibility of that testimony. During this argument, defense counsel stated that he did not file the motions because he had relied upon the District Attorney's informal policy of furnishing everything in a defendant's file to his attorney. He further stated that he made a trip to the prosecutor's office and that the only item of information he received was Louise Turner's statement. The prosecutor responded that he had been unaware that any fingerprint evidence was available until the first day of trial, and that on the morning of the second day, a copy of that report was provided to him and given to the defense counsel. Appellant fails to show how he would have received the report any earlier even if he had filed timely motions. As appellee's brief correctly states: "The alibi defense was destroyed not by defense counsel's lack of diligence, but by concrete evidence placing the defendant at the scene of the crime the day of the crime when his alibi would have

him elsewhere." Accordingly, having failed to show prejudice, this contention is without merit.

As his second subproposition, the appellant alleges that defense counsel made a series of errors allowing the admission of improper testimony from State's witnesses which created the implication that black people would lie to protect the appellant, a fellow black man, and that such an impression would be extremely damaging to appellant's alibi defense. The appellant bases his allegation upon the fact that the State called Mr. McGee, a black man, who testified he could not identify nor exclude the appellant as the man who was in the jewelry store at the time of the crime, even though Mr. McGee was present and saw the man. The prosecutor attempted to impeach that testimony by a prior inconsistent statement made to Detective Ross. But, assuming the prosecutor successfully impeached Mr. McGee's testimony, and assuming that the appellant's two witnesses were both black, which we do not find in the record, appellant fails to establish how convincing the jury that McGee was lying would cause them to conclude that black people would lie to protect a fellow black man, and to further conclude that therefore, appellant's witnesses would also lie to protect him. There are too many gaps in appellant's reasoning to treat this contention as anything other than frivolous.

Appellant's third subproposition is that defense counsel failed to argue the relevant law concerning warrantless arrests and failed to make an offer of proof after the trial court sustained the prosecutor's objection to a question asked by defense counsel. He asked the arresting offi-cer, "Would you have arrested this Defendant even if you'd not seen him supposedly, pouring out a liquid substance?" (referring to what the officer believed to be an illegal drug). The grounds for the objection was that the question called for speculation on the part of the witness. The objection was properly sustained on those grounds, 12 O.S.1981, § 2602. Arguing law concerning warrantless arrests and making an offer of proof would have been improper because such an argument is irrelevant to whether or not the question called for speculation. Defense counsel did not err in failing to make such an argument. This subproposition clearly lacks merit.

As his fourth subproposition, appellant argues that defense counsel based his motion to suppress the admission of the clothing confiscated from the appellant, two pictures taken of him on the day of the arrest, and a signed consent to search, upon the wrong legal theory. Appellant argues that defense counsel based the objection directly upon a lack of a waiver of his *Miranda* rights, and indirectly upon an illegal arrest, and that failing to develop the illegal arrest theory resulted in the improper admission of the exhibits. However, the record shows that counsel argued both lack of a clear waiver and illegal arrest, and that the trial court's ruling addressed both theories.[3] Therefore, this subproposition is also meritless.

As his fifth subproposition, the appellant complains that defense counsel failed to object to the prosecutor's allegedly improper impeachment of appellant's witnesses. During cross-examination of each, the prosecutor asked about prior con-

---

3. The record reflects the following ruling of the trial court:
  It is the finding of the Court after hearing the evidence of the Officers testifying in the Court's presence In Camera, that there was a lawful arrest of the Defendant on the 18th day of May, at approximately one a.m., that being a lawful arrest the seizure by the Oficers [sic] of State's Exhibits Four, Five and Six was pursuant to that lawful arrest and the Court will overrule Defendant's motion to suppress those items of evidence. Likewise State's Exhibits Seven and Eight were acquired pursuant to a lawful arrest. The Court also has previously announced that the obtaining of State's Exhibit Number Three was pursuant to a consent to search the residence of the Defendant and the Court has previously announced that the consent was knowingly and intelligently made by the Defendnat [sic]. (Tr. 134–135).

victions, which appellant alleges was baseless. He further alleges as he did in his second subproposition, that because both of these witnesses were black, the prosecutor's motive was to "reinforce the impression that all of the black witnesses were lying." These bald assertions fail to establish ineffective assistance of counsel.

■ For his sixth subproposition, the appellant complains first, that defense counsel failed to request a cautionary instruction on eye-witness identification, and second, that he failed to object to the erroneous instructions which incorrectly stated the statutory amount separating petit larceny from grand larceny. The appellant alleges that he was clearly entitled to a cautionary instruction on eye-witness testimony. Although this writer has not changed his view concerning cautionary instructions, see dissent, *McDoulett v. State*, 685 P.2d 978 (Okl.Cr.1984), even under the majority opinion in *McDoulett* such an instruction is not proper where no serious question exists concerning the reliability of that identification. In the instant case, Mrs. Turner's identification was positive and not weakened by any prior failure to identify. The fact that she reviewed before the trial, a statement she wrote shortly after the larceny, in no way weakens her identification. Therefore, a cautionary instruction is not applicable to these facts. As for the second complaint, the lack of prejudice shown by the erroneous instructions was disposed of in the first assignment of error. Having shown no prejudice to the appellant, this subproposition is without merit.

■ For his seventh subproposition, the appellant complains that defense counsel failed to object to allegedly improper comments of the prosecutor during closing arguments in the first and second stages of the trial. After examining the remarks of the prosecutor,[4] they cannot be said to be so clearly erroneous that the defense counsel's failure to object was not the exercise of reasonable professional judgment. *Strickland*, supra, at 104 S.Ct. 2066. Considering the overwhelming evidence of the appellant's guilt, we fail to see how the comments could have affected the verdict. See similar comments in *Welliver v. State*, 620 P.2d 438 (Okl.Cr.1980) and *Croan v. State*, 682 P.2d 236 (Okl.Cr.1984).

Having disposed of the seven subpropositions, we find that the appellant was not prejudiced by the enumerated actions of his defense counsel and that therefore this assignment of error is without merit.

### III.

■ As his final assignment of error, the appellant alleges that even if no single assignment of error was sufficient to justify reversal of appellant's conviction, or modification of his sentence, the cumulative error is sufficient to justify reversal or modification of his sentence. This Court has consistently held that where there is no individual error, there can be no error by accumulation. *Woods v. State*, 674 P.2d 1150 (Okl.Cr.1984). Therefore, this assignment of error is also without merit.

The judgment and sentence is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., specially concurs.

---

4.     STAGE ONE—GUILT
   (A) Protect the citizens of this town from the activities he's shown he can do. Thank you. (Tr. 251).
       STAGE TWO–SENTENCE
   (B) ... you have no choice but to warehouse him and make us a little bit safer because of it. (Tr. 269).
   (C) ... I think the message here is that it's time to draw the line and time to do something to make your fellow man a bit safer. (Tr. 269).

   (D) Do not chose [sic] to attack our fellow man, to victimize another human being. (Tr. 275).
   (E) We're talking about a life of attacking people. (Tr. 276).
   (F) Let him know that the logical consequences of what he does can be and are and should be—should be for those other people who don't attack other people's property. Who are willing to live without molesting other citizens. (Tr. 276).

PARKS, Presiding Judge, specially concurring:

I concur with the majority's opinion that this conviction must be affirmed. However, I write separately to reiterate that we do not, in this opinion, approve of the prosecutor's comments. These comments were not met with an objection at trial, and do not necessitate reversal. *See Freeman v. State*, 681 P.2d 84 (Okl.Cr.1984). In another case, one in which the comments did receive an appropriate objection and adverse ruling by the trial court, these comments might require reversal.